IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| KURT EICHENWALD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 1:17-cv-01124 |
| v. | ) | |
| | ) | |
| JOHN RIVELLO | ) | Jury Trial Demanded |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CORRECTED COMPLAINT

Plaintiff Kurt Eichenwald, by his undersigned counsel, with knowledge as to his own acts

and status, and upon information and belief as to the acts and status of others, for his Complaint

against Defendant John Rivello, alleges as follows:

## NATURE OF THE ACTION

1.     This is an action commenced by Kurt Eichenwald against John Rivello.  Mr.

Eichenwald is an award-winning journalist who suffers from epilepsy, a fact that Mr.

Eichenwald has repeatedly written about and is public knowledge.  The action arises primarily

from events that took place on December 15, 2016.  On that date, Mr. Rivello sent to Mr.

Eichenwald an electronic message over Twitter that contained an animated strobe image flashing

at a rapid speed and the statement "YOU DESERVE A SEIZURE FOR YOUR POSTS."  Such

strobe images are known to trigger seizures in people with epilepsy, and as a proximate result of

Mr. Rivello's actions, Mr. Eichenwald did in fact suffer a seizure and other substantial harm

upon receipt of the Twitter message at his home in Dallas, Texas.  At the time Mr. Rivello sent

the Twitter message, he knew that Mr. Eichenwald had epilepsy, knew that a strobe image

flashing at rapid speed was likely to cause Mr. Eichenwald to have a severe seizure, and intended

to cause precisely that result.  Just like a terrorist who mails a bomb, or an envelope filled with

anthrax, Mr. Rivello knew and intended his Twitter message with a flashing strobe light would

cause serious harm—and perhaps even death—to Mr. Eichenwald.  This action involves

common law tort claims under Texas law, including battery, assault, intentional infliction of

emotional distress, and purposeful infliction of bodily harm.

## THE PARTIES

2.      Plaintiff Kurt Eichenwald is a resident of the State of Texas and has his residence

in Dallas, Texas, where he lives with his wife.

3.      Mr. Eichenwald is an American journalist who serves as a senior writer with

Newsweek and a contributing editor at Vanity Fair.  Mr. Eichenwald previously worked for

twenty years at The New York Times as an investigative reporter, columnist, and senior writer.

He is a two-time winner of the George Polk Award for excellence in journalism, and was a

Pulitzer Prize finalist in 2000 and 2002.

4.      Mr. Eichenwald is an author of four books, including Serpent on the Rock (1995),

The Informant (2000), Conspiracy of Fools (2005), and 500 Days (2012).  Three of Mr.

Eichenwald's books have been included on the New York Times' bestselling list of books.

Additionally, in 2009 the Informant was made into a motion picture starring Matt Damon.

5.      Mr. Eichenwald was diagnosed with epilepsy at the age of 18.  While Mr.

Eichenwald suffered from frequent seizures as a young adult, more recently Mr. Eichenwald has

rarely experienced anything more than mild seizures after a medication change in approximately

2009.  Another medication change in or around 2013 also improved Mr. Eichenwald's control.

6.     Mr. Eichenwald has been public about his epilepsy in order to serve as an advocate for those with the condition.

7.     Mr. Eichenwald was awarded a journalism prize from the Epilepsy Foundation of America for his 1987 article titled "Braving Epilepsy's Storm," published January 11, 1987, by The New York Times Magazine.  Exhibit A.  The article discusses, among other things, Mr. Eichenwald's epilepsy diagnosis and how it almost cost him a college education.  *See id.*

8.     Mr. Eichenwald also publicly discussed his epilepsy in an article titled "Sean Hannity: Apologize to Those with Epilepsy, or Burn in Hell," published in Newsweek on August 15, 2016.  Exhibit B.  In that article, Mr. Eichenwald wrote:

> Despite having taken anticonvulsants for almost four decades, I–like many, many others–have seizures that are not fully controlled. (Those are called refractory seizures, if you care, Sean.) I have woken up, battered and bruised, when people who thought they were helping did things to me they had learned from the movies or television, things that were totally wrong. I lost a job and was tossed out of college because people were terrified of my seizures.

*See id.*

9.     Mr. Eichenwald's epilepsy is a subject of public knowledge and he continues to talk and write about it publicly.

10.     On information and belief, Defendant John Rivello is a resident of the State of Maryland and has his residence in Salisbury, Maryland.

## JURISDICTION AND VENUE

11.     The amount in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different States.  Subject matter jurisdiction is founded on 28 U.S.C. § 1332(a)(1).

12.     Venue is proper in this District under 28 U.S.C. § 1391(b), in that Defendant resides in this District and a substantial part of the events giving rise to the claims occurred in this District.

## STATEMENT OF FACTS

13.     Plaintiff is an active user of Twitter, which is a social media platform where users can create accounts from which they can post, respond to, and react to electronic messages called "Tweets." A Tweet may contain photos, videos, links, and up to 140 characters of text. *See* Exhibit C. Users of Twitter may "reply" to a Tweet by including the @username of the account that posted the Tweet. *See* Exhibit D. Users may also "mention" another account in a Tweet by including the @username of the account they wish to mention, and the Twitter system will recognize and link to the @username in the Tweet. *Id.* When there is a reply or mention to a user's Tweet, the reply or mention will show up in the user's Notifications tab on Twitter where the reply or mention can be viewed. *See* Exhibit E.

### A.  Background to the Attack on Mr. Eichenwald

14.     Plaintiff has posted over fifty-thousand Tweets under his professional Twitter account @kurteichenwald since joining Twitter in November 2010. Many of Plaintiff's Tweets concern current matters of public interest as well as Plaintiff's opinions and work, such as written publications, interviews, and other activities.

15.     Plaintiff had been extensively covering the 2016 presidential election, and has expressed criticism of Mr. Trump.

16.     For example, on September 14, 2016, Plaintiff's article, titled "How the Trump Organization's Foreign Business Ties Could Upend U.S. National Security," was published on

the Cover of Newsweek.  Exhibit F.  Plaintiff's September 14, 2016, article is critical of Mr.

Trump's business ties and the problems they could create during a Trump presidency.

17.    As a result of his work as a journalist, and particularly his critical coverage of Mr.

Trump, Plaintiff has received numerous threats and messages over the Internet.  Plaintiff

chronicles some of these threats in his article "How Donald Trump Supporters Attack

Journalists," published October 7, 2016, by Newsweek:

> Because I have written critically about Trump, I have received innumerable death
> threats, sometimes just general invocations that I should die, sometimes more
> specific threats that I should be shot or "lynched," as one Trump fan wrote. I have
> been called "kike," "Jew" and "anti-American Zionist," even though I'm
> Episcopalian with a Jewish father (as if that makes a difference). I have received
> video cartoons that look like they are from Nazi Germany of hook-nosed men
> dressed in Jewish garb rubbing their hands greedily over piles of money. I have
> been told to go back where I came from, whatever that means. I have been called
> "fag," "pedo," and once—in an email that made no sense—"nigger-lover." One
> Trump fan mentioned he knew which schools my children attended, and correctly
> named them. Topping it off, some Trump fans have even gone after one of my
> sons online, although he knew enough to immediately block them.

Exhibit G.

18.    In the October 7, 2016, article, Plaintiff also describes that he was the target of an

attack on Twitter designed to trigger seizures in individuals like himself who suffer from

epilepsy:

> A couple of weeks later, after my article about how Trump's business interests
> would create a conflict of unprecedented proportions, I received a tweet from
> someone with the twitter handle "Mike's Deplorable AF." Like many Trump
> supporters, he has chosen to identify himself as deplorable to mock the label once
> used by Clinton to describe the racists, neo-Nazis, homophobes and like who have
> crawled out of the sewer to cheer for the Republican nominee. Mike, however, is
> indeed deplorable.
>
> In his tweet, which has since been deleted, Mike made mention of my seizures
> and included a small video. It contained images of Pepe the Frog, a cartoon
> character that has been identified by the Anti-Defamation League as a hate
> symbol. I was carrying my iPad, looking at the still image on the video and,
> without thinking, touched the PLAY button.

The video was some sort of strobe light, with flashing circles and images of Pepe flying toward the screen. It's what's called epileptogenic—something that triggers seizures. Fortunately, since I was standing, I simply dropped my iPad to the ground the second I realized what Mike had done. It landed face down on the bathroom floor.

*See* Exhibit G.

19.     Plaintiff had received the Tweet from the "Mike's Deplorable AF" Twitter on or about the same night that Plaintiff's September 14, 2016, article criticizing Mr. Trump was published on the Cover of Newsweek.

**B.  The Effects of Flashing/Strobe Lights on People with Epilepsy**

20.     Visual stimuli that form patterns in time or space, such as flashing lights and strobe lights, can trigger seizures in certain individuals with epilepsy, particularly when they are tired or under stress.  This is sometimes referred to as photosensitive epilepsy.

21.     Visible light, including flashing and strobe lights, is described in physics as an electromagnetic wave formed by an oscillating electric and magnetic field.

22.     Maxwell's equations define the relationship between electrical fields and magnetic fields to form electromagnetic waves, such as visible light.

23.     The discovery of Maxwell's Equations is summarized in the Feynman Lectures on Physics as follows:

And thus is the universe knit together. The atomic motions of a distant star still have sufficient influence at this great distance to set the electrons in our eye in motion, and so we know about the stars. If this law did not exist, we would all be literally in the dark about the exterior world! And the electric surgings in a galaxy five billion light years away—which is the farthest object we have found so far— can still influence in a significant and detectable way the currents in the great "dish" in front of a radio telescope. And so it is that we see the stars and the galaxies.

*See* Exhibit H.

24.     Albert Einstein subsequently published a paper describing his particle theory of light, which states that "when a light ray is spreading from a point, the energy is not distributed continuously over ever-increasing spaces, but consists of a finite number of energy quanta that are localized in points in space, move without dividing, and can be absorbed or generated only as a whole." *See* Exhibit I.  Photons are the force carriers in visible light that give rise to forces between other particles.

25.     When a light wave reflects off an object and strike a person's cornea (the transparent outer covering of the eye), that focuses the light wave.

26.     The iris (the colored portion of the eye that surrounds the pupil), controls the amount of light that reaches the inside and back of the eye by automatically making the pupil bigger of smaller.

27.     The lens of an eye further bends the light and focuses and focuses it on the retina located in the back of the eye.

28.     The retina converts optical images into electrical impulses by a process called visual phototransduction.  The retina contains millions of light sensitive cells, the most common varieties called rods and cones.

29.     The visual phototransduction process is initiated when the photons of light corresponding to an optical image strike the light sensitive cells of the retina at the back of the eye, and a vitamin A molecule, called 11-*cis*-retinaldehyde, contained in those cells changes configuration.

30.     The electrical impulses generated by the light sensitive cells of the retina will then be transmitted by the optic nerve to the visual cortex, the part of the brain that controls Plaintiff's sense of sight.  *See* Exhibit J.

31.     The receipt by the brain of the electrical impulses caused by a flashing or strobe light can cause a seizure—including a fatal seizure—in a person with epilepsy.

32.     In the October 7, 2016, article, Plaintiff described that his epilepsy makes him vulnerable to such visual stimuli.  *See* Exhibit G.

**C.  Mr. Rivello Attacks Mr. Eichenwald**

33.     On December 15, 2016, an anonymous Twitter user by the account name @jew_goldstein or (((Ari Goldstein))) replied to one of Plaintiff's Tweets on Twitter.

34.     The use of multiple parentheses, or an "echo," around a name on Twitter is a typographical practice sometimes used to identify as user as an anti-Semite.  *See* Exhibit K.  The Anti-Defamation League has listed the triple parentheses or "echo" in its Hate Symbols Database, and its website explains that "in the spring of 2016, some anti-Semites began using the echo when responding to or re-tweeting Jewish journalists, or journalists thought to be Jewish." *Id*.

35.     The reply from the @jew_goldstein Twitter account to Plaintiff included a Graphic Interchange Format (GIF) file extension containing an animated strobe image flashing at a rapid speed (the "strobe GIF").

36.     Defendant John Rivello created the @jew_goldstein Twitter account.

37.     Defendant sent the Twitter reply to Plaintiff containing the strobe GIF.

38.     Defendant knew that Plaintiff has epilepsy when he sent the tweet containing the strobe GIF.

39.    Defendant intended that Plaintiff receive the strobe GIF when he sent the tweet containing the strobe GIF.

40.    The strobe GIF further depicts the words "YOU DESERVE A SEZIURE FOR YOUR POSTS."

41.    A photo of Defendant's tweet on Twitter is reproduced below.



42.    A screenshot of the strobe GIF sent by Defendant is reproduced below.



Exhibit L.

43.     On December 15, 2016, at approximately 10:15pm central time, Plaintiff clicked

on the notification button on twitter, which immediately loaded tweets that had been sent to him.

The Defendant's tweet appeared, and the strobe GIF automatically started playing as it was

displayed in Plaintiff's browser on his computer in his home office in Dallas, Texas.

44.     Defendant intended the strobe GIF to cause Plaintiff to have a seizure.

45.     As a proximate result of receiving and displaying the Twitter message sent from

Defendant with the automatically playing strobe GIF, Plaintiff suffered a severe seizure, as

intended by Defendant.

46.     As a proximate result of Defendant's actions, electromagnetic waves of visible

light corresponding to the Strobe GIF, as received and displayed on Plaintiff's computer, struck

Plaintiff's corneas and passed through Plaintiff's eyes.

47.    As a proximate result of Defendant's actions, these waves of visible light passed through Plaintiff's eyes' lens, which further bent the light in order to focus it on Plaintiff's retinas.

48.    As a proximate result of Defendant's actions, the photons from these waves of visual light struck Plaintiff's retinas, which in turn generated electrical impulses that were sent to Plaintiff's cortex.

49.    As a proximate result of Defendant's actions, Plaintiff suffered a seizure from the electrical impulses corresponding to the strobe GIF transmitting through Plaintiff's cortex.

50.    Plaintiff's wife, Theresa, witnessed Plaintiff's seizure and made sure that Plaintiff was in a safe location on the floor where he would not injure himself on any furniture during the seizure.  Once Plaintiff's seizure stopped, Plaintiff was unable to speak clearly and needed to sleep to overcome its effects.

51.    After witnessing Plaintiff's seizure, on December 15, 2016, Theresa posted on Twitter, using Plaintiff's account, "This is his wife, you caused a seizure.  I have your information and have called the police to report the assault."  A screenshot of the Tweet is reproduced below.



Kurt Eichenwald ✔
@kurteichenwald

[Follow]

@jew_goldstein This is his wife, you caused a seizure. I have your information and have called the police to report the assault.
11:31 PM - 15 Dec 2016

↩  🔁 2,627  ♥ 4,028

52.     Plaintiff's wife called 911 to report the assault and was instructed to call the computer crimes division. On calling that number, a recording instructed her to call back in the morning, which she did, eventually leaving a message.

53.     On information and belief, Defendant had been corresponding electronically with others, including through Twitter, about his intent to physically harm Plaintiff by causing Plaintiff to suffer a seizure.

**D. Arrest of Mr. Rivello**

54.     In a related criminal investigation, information was sought and obtained from Twitter Inc., AT&T, and Apple, which led investigators in that case to believe that Defendant operated the Twitter account, @jew_goldstein, which sent the tweet containing the strobe GIF to Plaintiff on December 15, 2016. *See* Exhibit M at ¶¶ 16, 19, and 25.

55.     Based on this information, a criminal complaint was filed in the United States District Court for the Northern District of Texas on March 10, 2017, and an arrest warrant was executed against Defendant on March 17, 2017.

56.     As such, the information obtained in the criminal investigation included information sufficient to identify Defendant as John Rivello, but the third parties' responses to search warrants also contained additional information regarding other communications and actions made by Defendant.

57.     On information and belief, before and after his December 15, 2016 attack on Plaintiff, Defendant discussed with one or more third parties Plaintiff's epilepsy, a desire to harm Plaintiff, and how to maximize the chance and degree of harm inflicted on Plaintiff.

58.     The contents of Defendant's communications with third parties concerning the attack on Plaintiff, as well as the identities of those third parties, are presently unknown to

Plaintiff.  On information and belief, Defendant is in possession of information that would identify such communications and third parties.

59.     For example, on December 13, 2016, Defendant, using the @jew_goldstein Twitter account, sent a direct message to other Twitter users stating that Plaintiff "[Plaintiff][1] deserves to have his liver pecked out by a pack of emus."  Exhibit M at ¶ 17.

60.     On December 16, 2016, the very next day after Defendant's December 15, 2016, attack on Plaintiff, Defendant, using the @jew_goldstein Twitter account, sent four direct messages to other Twitter users stating: (1) "I hope this sends him into a seizure," (2) "Spammed this at [Plaintiff] let's see if he dies," (3) "I know he has epilepsy," (4) "If I haven't been banned yet check my feed when you wake up. @[Plaintiff]."  Exhibit M at ¶ 17.  The first and second Twitter messages were accompanied by a linked or pasted item, such as a GIF or a photo.  *Id.*

61.     Additional review of the Twitter search warrant materials after the identification of John Rivello include direct messages sent to the @jew_goldstein account further supporting the association of John Rivello with that account. For example, a message on the day of the strobe GIF tweet stated "Awesome JR," while another sent two days later also refers to "JR." *Id.* at ¶ 32.

62.     Additionally, information was obtained from Apple's iCloud service as a result of the search warrant. An iCloud account which was registered to John Rivello contained information which links him to the sending of the tweet, related information regarding epilepsy, information regarding Plaintiff – including other tweets, news coverage regarding the tweet, and Plaintiff's personal information. *Id.* at ¶¶ 27-31.

---

[1] The cited affidavit identifies Plaintiff, Kurt Eichenwald, anonymously as "Victim#1." Quotes with [Plaintiff] from that affidavit refer to Kurt Eichenwald, but are written as [Victim#1] in the affidavit.

63.     For example, Defendant's iCloud account contained the strobe GIF which was sent to Plaintiff. *Id.* at ¶ 27. The iCloud account also contained a screen capture of that GIF having been sent to Plaintiff's Twitter account and a tweet from Plaintiff's wife in response to the GIF. *Id.* Additional screenshots in the account included a list of commonly reported epilepsy seizure triggers and a news report discussing Plaintiff's prior efforts to identify the operator of the @jew_goldstein Twitter account.  *Id.* at ¶ 30.

64.     Further, the iCloud account contained a screen capture of Plaintiff's Wikipedia page, which had been altered to show a fake date of death of December 16, 2016, for Plaintiff, as well as including other edits including anti-Semitic references. *Id.* at 28. A review of the page's history shows that the page appears to have been altered to show these changes in the early morning the day after the strobe GIF tweet was sent. Exhibit N. These changes were continually made and reverted over a period of about 40 minutes before the page was locked from revisions. *Id.* This suggests that the person who took the screen capture was involved or at least monitoring the vandalism of the page during this narrow time period.

65.     On March 20, 2017, Defendant was indicted by a grand jury of Dallas County, Texas, for the offense of aggravated assault with a deadly weapon by "inducing a seizure with an animated strobe image." Exhibit O. On information and belief, the grand jury was presented with sufficient evidence to support such an indictment. On information and belief, Defendant is in possession of much of the same information and other information of the type which was used as evidence in, and supported, the grand jury indictment.

### D.  <u>Harm to Mr. Eichenwald</u>

66.     Three business days later, on December 22, 2016, Plaintiff went to see his neurologist, Dr. Venkatesh Nagraddi.  Plaintiff was informed by his neurologist that the seizure

caused by Defendant had increased the probability of more seizures, and that Plaintiff's dosage of anticonvulsants should be raised for at least two months in hopes of preventing another episode.

67.     Plaintiff's children asked Plaintiff if he could delay increasing his medication because they knew the increased dosage could have a significant impact on Plaintiff's ability to think and function, and they hoped to avoid those problems until after Christmas.

68.      However, on December 23, 2016, Plaintiff woke up in a post-ictal (post-seizure) state.  Plaintiff's speech was slurred, he had trouble getting out of bed, and his left arm was paralyzed due to a post-seizure condition called Todd's Paralysis.  Such symptoms could only have been the consequence of a seizure Plaintiff experienced in his sleep.

69.     Since Plaintiff had experienced another seizure, Plaintiff decided he had to immediately increase his medication despite his family's hopes that he could make it through Christmas without him having to deal with the significant side-effects of these drugs.

70.     Plaintiff was sedated both on Christmas Eve and on Christmas because of the Todd's Paralysis and increase in his medication, and required assistance from his family to perform routine tasks.

71.     Plaintiff was embarrassed, humiliated, and deeply upset that he had become so dependent on others for basic care.

72.     Plaintiff has suffered severe emotional distress as a proximate result of Defendant's actions.

73.     Plaintiff suffered and continues to suffer bodily and emotional harm from side-effects from the increased dosage of medication as a result of Defendant's Twitter attack.

**COUNT I**
**(Battery Under Texas Law)**

74.     Mr. Eichenwald repeats and re-alleges each and every allegation of paragraphs 1-73 as if fully set forth herein.

75.     Mr. Rivello intentionally, knowingly, or recklessly caused Mr. Eichenwald to suffer bodily injury because of his acts described herein.  For example, Mr. Rivello's acts of sending a strobe GIF Mr. Eichenwald over Twitter caused Mr. Eichenwald to suffer bodily injury, including but not limited to a seizure.

76.     Mr. Rivello, by his acts described herein, intended to cause a harmful or offensive contact with Mr. Eichenwald, and a harmful contact with Mr. Eichenwald resulted.  For example, Mr. Rivello's acts described herein set a force in motion that ultimately caused Mr. Eichenwald to suffer bodily injury, including but not limited to a seizure.

77.     By reason of these acts, Mr. Eichenwald has suffered substantial injury.

**COUNT II**
**(Assault Under Texas Law)**

78.     Mr. Eichenwald repeats and re-alleges each and every allegation of paragraphs 1-77 as if fully set forth herein.

79.     Mr. Rivello intentionally and/or knowingly threatened Mr. Eichenwald with imminent bodily injury because of his acts described herein.  For example, Mr. Rivello's acts of sending a strobe GIF to Mr. Eichenwald over Twitter placed Mr. Eichenwald, who suffers from epilepsy, in apprehension of imminent bodily injury, including but not limited to a seizure.

80.     By reason of these acts, Mr. Eichenwald has suffered substantial injury.

**COUNT III**
**(Intentional Infliction of Emotional Distress Under Texas Law)**

81.     Mr. Eichenwald repeats and re-alleges each and every allegation of paragraphs 1-80 as if fully set forth herein.

82.    Mr. Rivello intentionally or recklessly performed the acts described herein, his conduct was extreme and outrageous, his actions caused Mr. Eichenwald emotional distress, and the resulting emotional distress was severe.

83.    For example, Mr. Rivello's intentional and reckless acts of sending a strobe GIF to Mr. Eichenwald, who suffers from epilepsy, over Twitter, is outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community.

84.    Mr. Eichenwald's resulting distress is so severe that no reasonable man could be expected to endure it and it is reasonable under the circumstances.

85.    By reason of these acts, Mr. Eichenwald has suffered substantial injury.

## COUNT IV
### (Purposeful Infliction of Bodily Harm/*Prima Facie* Tort Under Texas Law)

86.    Mr. Eichenwald repeats and re-alleges each and every allegation of paragraphs 1-85 as if fully set forth herein.

87.    Mr. Rivello purposefully caused bodily harm to Mr. Eichenwald by Mr. Rivello's affirmative conduct described herein, and Mr. Eichenwald did not consent to Mr. Rivello's conduct as described herein.  For example, Mr. Rivello purposefully caused bodily harm to Mr. Eichenwald, including the inducement of a seizure, by sending a strobe GIF to Mr. Eichenwald, who suffers from epilepsy, over Twitter.  Mr. Rivello's conduct was without excuse or justification, and Mr. Eichenwald did not consent to Mr. Rivello's conduct.

88.    By reason of these acts, Mr. Eichenwald has suffered substantial injury.

## **JURY DEMAND**

89.    Kurt Eichenwald hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Kurt Eichenwald prays that the Court enter judgment against John Rivello and in favor of Kurt Eichenwald in his favor on each and every claim for relief set forth above and award the relief set forth such that:

A.      Defendant accounts for damages adequate to compensate Plaintiff for Defendant's assault upon Plaintiff, battery upon Plaintiff, intentional infliction of emotional distress upon Plaintiff, and purposeful infliction of bodily harm upon Plaintiff, together with prejudgment interest;

B.      Costs, including reasonable attorneys' fees, be awarded to Plaintiff;

C.      Plaintiff be granted such other and further relief as the Court may deem proper under the circumstances.


DATED:  April 24, 2017              Respectfully submitted,

                                    By: _____

                                    ROTHWELL, FIGG, ERNST & MANBECK, P.C.

                                    Steven Lieberman
                                    Jennifer B. Maisel*
                                    607 14th Street, N.W. – Suite 800
                                    Washington, D.C.  20005
                                    Tel:  (202) 783-6040
                                    Fax:  (202) 783-6031
                                    Email: slieberman@rfem.com
                                    Email: jmaisel@rfem.com

                                    *Attorneys for Plaintiff*

*Application for admission *pro hac vice* is being filed herewith.