IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

KURT EICHENWALD,                     )
                                     )
        Plaintiff,                   )
                                     )    C.A. No. 17-cv-01124-JKB
        v.                           )
                                     )
JOHN RIVELLO                         )
                                     )
        Defendant.                   )
                                     )

## RESPONSE OF PLAINTIFF KURT EICHENWALD TO DEFENDANT'S MOTION TO STAY PROCEEDING PENDING RESOLUTION OF RELATED CRIMINAL CASES

### INTRODUCTION

Plaintiff Kurt Eichenwald agrees to a stay of this civil proceeding because of the substantial overlap between the issues in this case and the issues in the two pending criminal proceedings in which Mr. Rivello is a defendant.  However, Mr. Eichenwald requests that this Court structure the stay as reflected in the attached proposed order in order to prevent undue prejudice to Mr. Eichenwald and to ensure the preservation of relevant evidence during the pendency of the stay.

### FACTUAL BACKGROUND

Kurt Eichenwald is an award-winning journalist who serves as a senior writer for *Newsweek* and a contributing editor of *Vanity Fair*.  He previously worked for twenty years at *The New York Times* as an investigative reporter, columnist and writer, and is the author of four books.  Mr. Eichenwald also has epilepsy and has been public about his medical condition in

order to serve as an advocate for others with epilepsy.  Mr. Eichenwald's background and medical condition are described in the Complaint at paragraphs 3-8 (Dkt. 2).

As a result of his work as a journalist, and particularly his critical coverage of Mr. Trump during the 2016 presidential election, Plaintiff had received numerous threats and messages over the Internet, many from white supremacists.  *See* Compl. ¶ 17.  One of those messages is at the center of this lawsuit.  Specifically, on December 15, 2016, Mr. Rivello, using an anonymous Twitter handle "@jew_goldstein" or "(((Ari Goldstein)))[1]," intentionally targeted Mr. Eichenwald by sending to Plaintiff "an electronic message over Twitter that contained an animated strobe image flashing at a rapid speed and the statement 'YOU DESERVE A SEIZURE FOR YOUR POSTS.'" Compl. ¶¶ 33-45.  This flashing strobe light caused Mr. Eichenwald to suffer a seizure and other substantial (and continuing) harm.  *Id.* ¶¶ 33-45, 66-73.  At the time Mr. Rivello sent the Twitter message, he knew that Mr. Eichenwald had epilepsy, knew that a strobe image flashing at rapid speed was likely to cause Mr. Eichenwald to have a severe seizure, and intended to cause precisely that result.  *Id.* ¶¶ 33-53.

On December 16, 2016, the very next day after Mr. Rivello's December 15, 2016, attack on Mr. Eichenwald, Mr. Rivello, again using the anonymous @jew_goldstein Twitter account, sent four direct messages to other Twitter users stating:  (1) "I hope this sends him into a seizure," (2) "Spammed this at [Plaintiff] let's see if he dies," (3) "I know he has epilepsy," ( 4) "If l haven't been banned yet check my feed when you wake up. @[Plaintiff]." Compl. ¶ 60, Ex. M ¶ 17. The first and second Twitter messages were accompanied by a linked or pasted item, such as a GIF or a photo.  *Id.*

---

[1] The use of multiple parentheses, or an "echo," around a name on Twitter is a typographical practice used to identify as user as an anti-Semite.  *See* Compl. Ex. K.  The Anti-Defamation League has listed the triple parentheses or "echo" in its Hate Symbols Database, and its website explains that "in the spring of 2016, some anti-Semites began using the echo when responding to or re-tweeting Jewish journalists, or journalists thought to be Jewish." *Id.*

On March 10, 2017, the Office of the United States Attorney for the Northern District of Texas filed a criminal complaint against Mr. Rivello in the United States District Court for the Northern District of Texas.  An arrest warrant was executed against Mr. Rivello on March 17, 2017, at Mr. Rivello's house in Maryland, and Mr. Rivello was subsequently transported to Dallas, where he was arraigned.  Compl. ¶ 55.  The information obtained in the criminal investigation show that, both before and after his attack on Mr. Eichenwald, Mr. Rivello had discussed with one or more third parties Mr. Eichenwald's epilepsy, his desire to harm Mr. Eichenwald, and how to maximize the chance and degree of harm inflicted on him.  *Id.* ¶ 57; *see also Id.* ¶¶ 59-60 ("Spammed this at [Kurt Eichenwald] let's see if he dies").

On March 20, 2017, Mr. Rivello was indicted by a grand jury in Dallas County, Texas, for the offense of aggravated assault with a deadly weapon by "inducing a seizure with an animated strobe image." *Id.* ¶ 65.  The indictment included a hate-crime enhancement: "Defendant did intentionally select the said [Plaintiff] primarily because of the said Defendant's bias or prejudice against a group identified by race, ancestry, or religion, namely: persons of Jewish faith or descent." *Id.* Ex. O.  While Mr. Eichenwald is not in fact Jewish, Mr. Rivello believed that he was.

Both the Federal and State criminal cases against Mr. Rivello are pending; no trial date has yet been set in either case.

## PROCEDURAL BACKGROUND

Mr. Eichenwald filed his civil Complaint on April 24, 2017.  (Dkt. 2).  In response, Mr. Rivello filed a Motion to Stay Proceedings Pending Resolution of Related Criminal Proceedings. (Dkt. 13).

Mr. Eichenwald sent a draft stipulation to Mr. Rivello on July 21, 2017, agreeing to the stay subject to three <u>conditions</u> designed to prevent undue prejudice to Mr. Eichenwald as a result of the stay.  Declaration of Jennifer Maisel, dated August 24th, 2017 ("Maisel Declaration"), Exs. A-B.  The proposed stipulation provides for: (i) a joint status conference every ninety days; (ii) discovery of documents and electronic stored information in Mr. Rivello's possession custody, or control (a) relating to or concerning Mr. Eichenwald or (b) produced by or otherwise made available to Mr. Rivello by the government or a third party in the criminal proceedings; and (iii) an agreement that, should the stay be lifted, the parties will expedite discovery and the case schedule such that Plaintiff will not have been delayed or otherwise affected by this stay, to the extent practicable.  *Id.*, Ex. B at p. 2, ¶ 3.  Mr. Rivello rejected those proposed conditions, without explanation (Maisel Decl. Ex. C), thus necessitating this response.

## ARGUMENT

### I.   THE PROPOSED CONDITIONS WILL HELP TO PREVENT (OR MITIGATE) UNDUE PREJUDICE TO MR. EICHENWALD

Mr. Eichenwald does not object to a stay of this action.  However, he respectfully requests that this Court to use its inherent power to structure such a stay in a manner that will avoid undue prejudice to Mr. Eichenwald and ensure adequate preservation of electronic evidence.  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936).  Such discretion requires a court to "weigh competing interests and maintain an even balance." *Id.* at 254–55.  "Three factors should be considered in weighing a motion to stay:'(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party.'" *Sam Yang (U.S.A.), Inc. v. ENI Dist, Inc.*, No.

JKB-16-2958, 2016 WL 7188447, at *3 (D. Md., Dec. 12, 2016) (Bredar, J.) (*quoting Davis v.*

*Biomet Orthopedics, LLC*, No. JKB-12-3738, 2013 WL 682906 (D. Md. Feb. 22, 2013)).  Each

of these factors weighs heavily in favor of the protections Mr. Eichenwald seeks, and courts

routinely structure a stay of proceedings in a manner to avoid undue prejudice to the non-moving

party.  *See, e.g., Landis*, 299 U.S. at 257  (advising that a "stay is immoderate and hence

unlawful unless so framed in its inception that its force will be spent within reasonable limits, so

far at least as they are susceptible of prevision and description."); *Am. Home Assur. Co. v. Vecco*

*Concrete Const. Co. of Virginia*, 629 F.2d 961, 964 (4th Cir. 1980) ("To assure that the stay of

all proceedings requested by Vecco will not prejudice American Home, Vecco shall be required

to give bond in an amount sufficient to save American Home harmless pending the stay.");

*Cognate BioServices, Inc. v. Smith*, No. CIV. WDQ-13-1797, 2015 WL 5673067, at *5 (D. Md.

Sept. 23, 2015) (granting motion to stay, except with respect to certain categories of discovery,

including discovery from third-parties).

    First, Plaintiff proposes the parties submit a joint status report with the Court every ninety

(90) days.  Proposed Order at p. 2, ¶ 2.  This will provide the parties with an opportunity to

regularly confer on the status of the criminal proceedings and a mechanism to lift the stay,

should it be warranted.  *See, e.g., Allstate Ins. Co. v. Hemingway Homes LLC*, No. 12-CV-

00744-AW, 2012 WL 4748089, at *3 (D. Md. Oct. 3, 2012) (granting stay and ordering parties

"to file a report every six months describing the status of the arbitration and whether the parties

anticipate moving to lift the stay and reopen the case for any reason.").

    Second, Mr. Eichenwald seeks an order requiring Mr. Rivello to produce all existing

documents and electronically stored information in Mr. Rivello's possession, custody, or control

"(i) relating to or concerning Plaintiff, including communications with any third party about

Plaintiff, or (ii) produced by or otherwise provided or made available to Defendant by the government or a third party in the Criminal Proceedings." Proposed Order at p. 2, ¶ 3.  This limited relief will help ensure that relevant evidence is preserved and that Mr. Eichenwald is given access as necessary to relevant evidence as it is produced in the criminal proceedings so that once the stay is lifted the case may proceed without additional delays.

Much of the relevant evidence of this case will include electronic, Internet-based evidence, including Mr. Rivello's Twitter correspondence (and other electronic communications) and documents concerning Mr. Eichenwald. *See, e.g.*, Compl. at ¶¶ 56-64.  As already revealed by the limited publicly-available evidence from the federal criminal proceeding, Mr. Rivello communicated his intention to target and harm Mr. Eichenwald with one or more third parties. *See, e.g.*, Compl. at ¶ 60 (describing message Mr. Rivello sent to third party stating "let's see if he dies").  During litigation, parties to the litigation have a duty to preserve material evidence. *Silvestri v. Gen. Motors Corp.,* 271 F.3d 583, 591 (4th Cir.2001).  This duty to preserve covers "[a]ny information relevant to the claims or defenses of any party, or which is relevant to the subject matter involved in the litigation." *Broccoli v. Echostar Commc'ns Corp.*, 229 F.R.D. 506, 510 (D. Md. 2005).  In the event Mr. Rivello (including his attorneys) is provided access to evidence produced by the government or obtained from third-parties in the criminal proceedings, Mr. Rivello has an obligation to preserve such materials.  In addition, he should be required to provide Mr. Eichenwald with access to such evidence.

This is particularly so because, should a stay be entered, Mr. Eichenwald will be unable to timely seek discovery of relevant electronic information from Mr. Rivello and from third parties.  Given the transient nature of electronic information, particularly that held by third party services such as Twitter with document retention polices that routinely result in the destruction

6

of data, delay in discovery increases the chance that electronic information that may support Mr. Eichenwald's claims would be lost or destroyed. *See, e.g.*, Maisel Decl., Ex. D at p. 4 ("Twitter retains different types of information for different time periods. . . some information (e.g., IP logs) may only be stored for a very brief period of time").

Moreover, given that Mr. Rivello's online correspondents include white supremacists—who may be less than punctilious about the preservation of evidence regarding their own comments—it is essential that any such evidence uncovered by either the State or Federal criminal authorities and made available to Mr. Rivello as part of the criminal proceedings promptly be made available by Mr. Rivello to Mr. Eichenwald.

Through his participation in the criminal proceedings, Mr. Rivello has obtained or will obtain electronic information relevant to the present case. Should a stay be entered with no provisions protecting Mr. Eichenwald's interests, not only is there the very great risk that relevant evidence will be lost or destroyed, but Mr. Rivello will obtain the substantial advantage of having months (or years) more than Mr. Eichenwald to analyze electronic information relevant to this case and thereby identify leads, witnesses, etc.

The decision in *In re Royal Ahold N.V. Sec. & Erisa Litig.*, 220 F.R.D. 246 (D. Md. 2004), is particularly relevant to the facts present here.  There, the Court lifted a statutory stay under the Private Securities Litigation Reform Act ("PSLRA") for the limited purpose of allowing the plaintiffs to obtain certain "key evidence," including documents and materials that the defendants "have produced or provided in connection with inquiries or investigations by governmental, regulatory, or self-regulatory agencies," in order to avoid undue prejudice to the plaintiffs and to address document preservation concerns. *Id.* at 252, 255.  With respect to prejudice, the Court in *Royal Ahold* reasoned that, "[w]ithout access to key documents that have

7

already been produced to government investigators and that soon will be produced to the [other parties], the securities plaintiffs could suffer a severe disadvantage in formulating their litigation and settlement strategy." *Id*. at 252.  Additionally, while the Court found that the materials "produced to outside agencies will, presumably, be preserved by those agencies," the Court recognized that the production of such evidence "could help the plaintiffs identify other specific materials that may be at risk of loss" due to the defendants' recent divestitures. *Id*. at 251.  As such, this Court can, and should, minimize the prejudice to Mr. Eichenwald by ensuring that Mr. Eichenwald obtains prompt access to such "key documents."

Third, should the stay be lifted, Mr. Eichenwald requests that this Court enter an order providing for expedited discovery and a case schedule such that Mr. Eichenwald will not have been unduly delayed or otherwise affected by this stay, to the extent practicable.  Proposed Order at p. 2, ¶ 4.

## CONCLUSION

For the foregoing reasons, Mr. Eichenwald respectfully requests that the Court enter the proposed order attached hereto.

Respectfully submitted,

Dated: <u>August 24, 2017</u>

_____
Steven Lieberman
Jennifer B. Maisel (admitted *pro hac vice*)
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
607 14th Street, N.W. – Suite 800
Washington, D.C.  20005
Tel:  (202) 783-6040
Fax:  (202) 783-6031
Email: slieberman@rfem.com
Email: jmaisel@rfem.com
*Attorneys for Plaintiff Kurt Eichenwald*

8

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 24th day of August, 2017, a copy of the foregoing RESPONSE OF PLAINTIFF KURT EICHENWALD TO DEFENDANT'S MOTION TO STAY PROCEEDING PENDING RESOLUTION OF RELATED CRIMINAL CASES was filed electronically through the Court's Electronic Case Management and Filing System. All parties to this case are able to access the filing through this system.

Nasri V.B. Hage