## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

KURT EICHENWALD,

    **Plaintiff**

    **v.**

JOHN RIVELLO,

    **Defendant**

\*    \*    \*    \*    \*    \*

**CIVIL NO.  JKB-17-1124**

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM</u>

Plaintiff Kurt Eichenwald brought this action against Defendant John Rivello over a year ago, on April 24, 2017.  (Corrected Compl., ECF No. 2.).  Defendant is facing criminal charges related to the same incident underlying this civil case, and therefore this case was stayed on August 28, 2017.  (*See* Paperless Order, ECF No. 20.)  On March 6, 2018, the Court partially lifted the stay and ordered Defendant to respond to Plaintiff's complaint by March 21, 2018. (Order to Partially Lift Stay, ECF No. 24.)  Defendant responded by answering Counts II and III of Plaintiff's complaint (Ans., ECF No. 25), and moving to dismiss Counts I and IV (Mot. Dismiss, ECF No. 26).  Plaintiff has responded to Defendant's motion (ECF No. 27) and Defendant has replied (ECF No. 30).  Therefore, Defendant's motion to dismiss is fully briefed and ripe for review.  There is no need to hold a hearing to resolve the matter.  *See* Local Rule 105.6 (D. Md. 2016).  Defendant's characterization of Texas law regarding civil battery is incorrect, and the Court will not foreclose Plaintiff's attempt to try his fourth count in a different court or at a later time.  Accordingly, the Court will grant in part and deny in part Defendant's motion to dismiss, and dismiss Count IV of Plaintiff's complaint without prejudice.

I.      ***Background***[1]

Plaintiff is a journalist and author currently living in Texas.  (Corrected Compl.  ¶¶ 2-4.)

Plaintiff's work is well known.  He writes for Newsweek and Vanity Fair.  (*Id.* ¶ 3.)  He worked

for years at the New York Times, has authored four books, and has won several awards including

the George Polk Award (twice).  (*Id.* ¶¶ 3-4.)  He is an active Twitter user, having posted over

50,000 tweets.  (*Id.* ¶ 14.)

Plaintiff also has epilepsy.  (Corrected Compl. ¶ 5.)  He was diagnosed at age 18, and

"suffered from frequent seizures as a young adult."  (*Id.*)  Medication has helped reduce the

number of seizures, but he continues to experience them.  (*See id.* ¶¶ 5, 8.)  Plaintiff has been

public about his condition in the past and in 2016 wrote an article, published in Newsweek, titled

"Sean Hannity:  Apologize to Those with Epilepsy, or Burn in Hell."  (*Id.* ¶¶ 7-8.)

During the 2016 election, Plaintiff was often critical of then-candidate Donald J. Trump,

and expressed those views in his writing and on his Twitter account.  (Corrected Compl. ¶¶ 15-

16.)  Plaintiff "received numerous threats and messages over the Internet" as a result of his

public criticism, and wrote about the online abuse for Newsweek in October 2016.  (*Id.* ¶ 17; *see*

Kurt Eichenwald, *How Donald Trump Supporters Attack Journalists*, Newsweek, ECF No. 1-7

(hereinafter "October 2016 Article").)  In that article, Plaintiff wrote about one instance of online

harassment in particular.  Plaintiff "received a tweet from someone with the twitter handle

'Mike's Deplorable AF.'"  (October 2016 Article at 2.)  In that tweet "Mike made mention of

[Plaintiff's] seizures and included a small video . . . .  The video was some sort of strobe light,

with flashing circles and images . . . flying toward the screen."  (*Id.*)   The video was

---

[1] The facts are recited here as alleged by Plaintiff, as this memorandum is evaluating a motion to dismiss.  *See*
*Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

"epileptogenic," meaning it "triggers seizures." (*Id.*) Plaintiff did not suffer a seizure upon opening this video, however, because he quickly dropped the device. (*Id.*)

Two months later, on December 15, 2016, a Twitter user with the handle @jew_goldstein, replied to one of Plaintiff's tweets. (Corrected Compl. ¶ 33.) When Plaintiff "clicked on the notification button on twitter," the replies to his tweet "immediately loaded," including the reply from @jew_goldstein. (*Id.* ¶ 43.) The tweet included (and immediately displayed) a Graphic Interchange Format ("GIF") that contained "an animated strobe image flashing at a rapid speed." (*Id.* ¶ 35.) In addition to the flashing images, the GIF contained the message "YOU DESERVE A SEIZURE FOR YOUR POSTS." (*See* Strobe GIF, Compl. ¶ 41.) Upon seeing the rapidly flashing GIF, "Plaintiff suffered a severe seizure." (*Id.* ¶ 45.)

For reasons that will become clear, it is necessary to briefly discuss the physical reactions that led to Plaintiff's seizure. Light comes in rays, or waves, comprised in part by photons. (Corrected Compl. ¶ 24.) These waves sometimes reflect off objects and "strike a person's cornea," which "focuses the light wave." (*Id.* ¶ 25.) The eye focuses the wave onto its retina, which through a process of "visual phototransduction," converts the light wave into electrical impulses. (*Id.* ¶¶ 27-28.) That is, photons hit the retina and are converted into electrical signals. (*Id.* ¶¶ 28-29.) These electrical signals are then transmitted by the optic nerve to the visual cortex. (*Id.* ¶ 30.) Such electrical signals from strobing images "can trigger seizures in certain individuals with epilepsy." (*Id.* ¶ 20.) So, Defendant intentionally caused photons to hit Plaintiff's retina, causing Plaintiff to suffer a seizure.

Plaintiff's wife witnessed the seizure and, after caring for Plaintiff, called the police. (*Id.*¶¶ 50-51.) According to information obtained as a result of the criminal investigation, Defendant, who lives in Maryland, operated the @jew_goldstein account. (*Id.* ¶ 54.) Defendant

discussed with others his intent to harm Plaintiff by causing a seizure.  (*See id.* ¶¶ 57-61.)
Defendant was arrested on March 17, 2017, and three days later a grand jury indicted him for the
offense of aggravated assault with a deadly weapon.  (¶¶ 55, 65; *see* Indictment, ECF No. 1-15.)

Plaintiff continued to suffer as a result of the December 15 seizure.  He experienced
another seizure in his sleep, and he had to take increased medication, which left him sedated and
disabled during the holidays.  (Corrected Compl. ¶¶ 68-70.)  He "required assistance from his
family to perform routine tasks," and was "embarrassed, humiliated, and deeply upset," as a
result of this incident.  (*Id.* ¶¶ 70-71.)

With the criminal case against Defendant still pending, Plaintiff filed a civil case against
Defendant in this Court on April 24, 2017.  Plaintiff brought four claims:  (I) battery, (II) assault,
(III) intentional infliction of emotional distress, and (IV) "purposeful infliction of bodily
harm/*prima facie* tort under Texas law."  (Corrected Compl. ¶¶ 74-88.)  The civil case was
stayed pending resolution of the criminal case, but in an earlier order the Court partially lifted
that stay and ordered Defendant to respond to Plaintiff's corrected complaint by March 21, 2018.
Defendant responded on that date, answering Counts II and III, and moving to dismiss Counts I
and IV.  Defendant's motion to dismiss is fully briefed and ripe, and the Court will turn now to
its disposition.

**II.    *Standard***

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to
relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell
Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the
plaintiff pleads factual content that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  An inference of a mere

possibility of misconduct is not sufficient to support a plausible claim.  *Id.* at 679.  As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level."  550 U.S. at 555.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . .  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).  Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations.  *Twombly*, 550 U.S. at 555.

### III.     *Applicable Law*

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because the parties are diverse and the amount in controversy is over $75,000.  "In diversity actions, a district court applies the substantive law and choice of law rules of the state in which the court sits."  *Chartis Prop. Cas. Co. v. Huguely*, 243 F. Supp. 3d 615, 622 (D. Md. 2017).  The Court will therefore apply Maryland choice of law rules.  "The rule of *lex loci delicti* is well established in Maryland," and under that rule, "the substantive tort law of the state where the wrong occurs governs."  *Hauch v. Connor*, 453 A.2d 1207, 1209 (Md. 1983).  Plaintiff has alleged that he was harmed in Texas, and therefore the Court will apply the substantive tort law of Texas in analyzing Plaintiff's claims.  Defendant concedes that Texas law controls in this case and has presented arguments entirely under Texas law.

### IV.     *Analysis*

Defendant has moved to dismiss Counts I and IV of Plaintiff's complaint, and presents three arguments in support of that request.  First, Defendant contends that Texas courts do not recognize a claim of civil battery, and instead only recognize a claim for assault.  Second,

Defendant argues that Plaintiff's claim of battery fails because he has not alleged any physical contact.  Third, Defendant asserts that the "wrong" claimed in Count IV has not yet been recognized as a tort in Texas and therefore it must be dismissed with prejudice.  The Court will address each argument in turn.

###### a.  *Assault* and *Battery*

Defendant requests that the Court dismiss Plaintiff's first count of battery because, he argues, Texas does not recognize the tort of battery.  Defendant is incorrect.

Under Texas law, "[t]he definition of assault is the same, whether in a civil or criminal trial." *Rogers v. Peeler*, 146 S.W.3d 765, 769 (Tex. Ct. App. 2004).  "A person commits assault under the Texas Penal Code if the person intentionally, knowingly, or recklessly causes bodily injury to another, intentionally or knowingly threatens another with imminent bodily injury, or intentionally or knowingly causes physical contact when the person knows or should reasonably believe the other will regard such contact as offensive or provocative." *Culver v. Culver*, 360 S.W.3d 526, 533 (Tex. Ct. App. 2011) (citing Tex. Penal Code Ann. § 22.01).

Texas courts' reliance on the Texas penal code in civil cases, and the Texas penal code's combination of common law assault (threatening another with imminent bodily injury) and common law battery (harmful or offensive touching), has resulted in "a number of civil courts mix[ing] them together under the term 'assault.'" *Carter v. Diamond URS Huntsville, LLC*, 175 F. Supp. 3d 711, 741 (S.D. Tex. 2016).  Still, "[a]lthough the two torts are related [they are] conceptually distinct.'" *Id.* (internal quotation marks omitted).  Assault is redress for threatened, but non-consummated, harmful touchings; battery is redress for actual harmful, or offensive, touchings.  "Texas courts have recognized private causes of action for both assault and battery for well over a century." *City of Watauga v. Gordon*, 434 S.W.3d 586, 589 (Tex. 2014).

So, the law is clear (even if the semantics are not).  Whatever the label given to the cause of action, under Texas law a plaintiff can assert a cause of action for common law battery, *i.e.* for "intentionally, knowingly, or recklessly caus[ing] bodily injury [or] intentionally or knowingly caus[ing] physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative."  Tex. Penal Code Ann. § 22.01(a)(1), (3).  Insofar as Defendant's argument is that Plaintiff cannot bring a battery claim *at all* under Texas law, Defendant is incorrect.  *See Chennault v. Chennault*, NO. 12-17-00295-CV, 2018 WL 992115, at *4 (Tex. Ct. App. Feb. 21, 2018) (defining "civil battery" and "civil assault" as separate causes of action).

Another reading of Defendant's argument, however, is that Plaintiff cannot bring *both* an assault *and* a battery claim under Texas law.  According to this argument, both causes of action are now melded into a single cause of action, "assault," and although a plaintiff can recover for an intentional harmful or offensive touching, he cannot recover for both an intentional harmful or offensive touching and the threat of such a touching.  Insofar as this is a proper reading of Defendant's argument, it still fails.  As Plaintiff's complaint stands, he alleges that Defendant's intentional tortious conduct a) caused him to suffer physical harm and b) put him in fear of immediate physical harm.  Under Texas law, he can recover for both.  If it turns out that he can only *prove* physical harm, or only apprehension of immediate harm, that does not mean it is improper to *plead* both torts in his complaint.  Furthermore, at least at this early stage Plaintiff can plead as many alternative, or even inconsistent, causes of action and legal theories as he pleases.  *See* Fed. R. Civ. P. 8(d).  Ultimately, Texas recognizes both assault and battery and Plaintiff may plead both assault and battery.  The Court will not dismiss Count I on these grounds.

**b.   *Battery by GIF***

Defendant next argues that, whatever the label, Plaintiff's allegations do not amount to a civil battery under Texas law.  The Court disagrees.

As an initial matter, the Court notes that however one characterizes Plaintiff's claim, the facts as pled constitute some form of a tort.  "The fundamental purposes of our tort system are to deter wrongful conduct, shift losses to responsible parties, and fairly compensate deserving victims."  *Roberts v. Williamson*, 111 S.W.3d 113, 118 (Tex. 2003).  "So far as there is one central idea [in tort law], it would seem that it is it that liability must be based upon conduct which is socially unreasonable.  The common thread woven into all torts is the idea of unreasonable interference with the interests of others."  W. Page Keeton et al., Prosser and Keeton on Torts, § 1 at 6 (5th ed. 1988) (hereinafter "Prosser").[2]  The civil tort is a mechanism by which courts aid in the maintenance of a civil society, and as such "offensive contacts, or those which are contrary to all good manners, need not be tolerated."  *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 802-03 (Tex. 2010) (internal quotation marks omitted).  Plaintiff has alleged that Defendant sent Plaintiff an image with the intent to cause Plaintiff to have a seizure.  Whatever exact name a legal scholar may put to it, that is a tort; it is conduct outside the bounds of a civil society, conduct that should be punished so as to deter its repetition, and conduct that causes a compensable harm.  *See Macmillan v. Redman Homes, Inc.*, 818 S.W.2d 87, 95 (Tex. App. 1991) (citing Prosser, § 4 at 25-26) ("One objective of tort litigation is to modify the defendant's behavior—and the behavior of others who want to engage in the same conduct—by deterring conduct considered after the fact to be unreasonable.").  And although the exact

---

[2] The Texas Supreme Court often relies on Prosser when discussing tort claims.  *See, e.g., Crosstex N. Texas Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 591 (2016); *City of Watauga*, 434 S.W.3d at 591; *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 802 n.15 (2010); *Jackson v. Axelrad*, 221 S.W.3d 650, 656 (2007); *Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 656 (1999); *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (1991).

contours of the tort lack perfect clarity, ultimately it qualifies as a battery.  "[T]he essence of the plaintiff's grievance consists in the offense to the dignity involved in the unpermitted and intentional invasion of the inviolability of his person."  Restatement (Second) of Torts § 18 cmt. c (Am. Law. Inst. 1965) (discussing battery).  It is alleged that Defendant purposely acted to violate the dignity and health of the Plaintiff and did in fact so harm him.  The novelty of the mechanism by which the harm was achieved does not make those actions any less a tort.

Although the nation's leading authority on tort law contends there may be "no necessity whatever that a tort have a name," Prosser § 1 at 3, in the first three counts of his complaint, Plaintiff has applied several to the tortious conduct he perceives here:  battery, assault, and intentional infliction of emotional distress.[3]  And, specifically, Defendant has moved to dismiss Plaintiff's "battery" claim.  Therefore, it is through the lens of an alleged "battery" that the Court shall assess the validity of Plaintiff's pleading.

As explained above, Texas courts look to the statutory definition of criminal assault for the definition of a civil battery.  Thus, in Texas, a battery is the intentional, knowing, or reckless causing of a bodily injury, or intentionally or knowingly causing "physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative."  Tex. Pen. Code Ann. § 22.01(a)(1), (3).  Or, more simply, a battery is "the least touching of another person willfully and in anger, by the use of any part of the body of the party committing the offense."  *Marshall v. AT&T*, 117 F.3d 1417, 1997 WL 336280, at *2 (5th Cir. June 5, 1997) (unpublished decision) (quoting *Price v. Short*, 931 S.W.2d 677, 687 (Tex. Ct. App. 1996)).

A battery undoubtedly requires some physical contact.  *Lewis v. Continental Airlines, Inc.*, 80 F. Supp. 2d 686, 695 (S.D. Tex. 1999).  "In an assault and battery case, if the defendant

---

[3] Plaintiff's fourth claim will be dismissed without prejudice for reasons explained below.

establishes the lack of physical contact, then he successfully eliminates an essential element of the cause of action." *Preble v. Young*, 999 S.W.2d 153, 156 (Tex. Ct. App. 1999).  It is similarly well-established that the physical contact need not be with the physical body of the plaintiff, *see, e.g.*, *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627, 629 (Tex. 1967) (grabbing a person's plate in buffet line constituted a battery); Prosser § 9, notes 8-15 and accompanying text) (listing examples), and it need not be *direct* physical contact, *see U.S. v. Villegas-Hernandez*, 468 F.3d 874, 879 (5th Cir. 2006) (discussing, in dicta, possible scenarios that would constitute a criminal assault under Texas law); *Hutchison v. Brookshire Bros., Ltd.*, 284 F. Supp. 2d 459, 475 (E.D. Tex. 2003) ("For Defendant to cause Plaintiff to be touched does not require that Defendant himself actually touch Plaintiff."); Prosser § 9 n.16 (citing examples such as "operating car so as to throw plaintiff from running board").  So, in order for a battery to occur, there must be some physical contact between something and the plaintiff or something attached to the plaintiff.

If a person intentionally (or knowingly, or recklessly) causes another to come into contact with a harmful physical element, that is a battery under Texas law.  *See Hutchison*, 284 F. Supp. 2d at 475; *Villegas-Hernandez*, 468 F.3d at 879.  In *Hutchinson*, for example, the plaintiff alleged that a store owner had asked a police officer to force the plaintiff to siphon gasoline from the plaintiff's car (plaintiff had accidentally over-pumped).  284 F. Supp. 2d at 463-64.  The Court found that because a reasonable jury could conclude that the store owner knew the officer would force plaintiff to siphon the gas, the plaintiff's battery claim survived summary judgment.  *Id.* at 475.  In *Villegas-Hernandez*, the Fifth Circuit, discussing Texas law, stated that the injury caused in a battery "could result from any number of acts [such as] making available to the

victim a poisoned drink while reassuring him the drink is safe, or telling the victim he can safely back his car out while knowing an approaching car . . . will hit the victim."  468 F.3d at 879.

Here, Plaintiff generally alleges that Defendant intentionally caused Plaintiff to come into contact with a harmful physical element (*i.e.*, the strobe GIF), and that is a battery under Texas law.  It is alleged that Defendant knew that Plaintiff would see the GIF, knew that its physical properties would cause him a seizure, and knew that a seizure would be physically harmful, or at least "offensive or provocative."  Tex. Pen. Code Ann. § 22.01(a)(3).  Not only did Defendant know these things, Plaintiff alleges that Defendant intended the exact harmful result that occurred.  Plaintiff has stated a claim for battery under Texas law.

Defendant's concern focuses on the medium of the contact, asserting that "there is no allegation in the Corrected Complaint of any physical contact between Plaintiff and Defendant." (Mot. Dismiss Mem. Supp. 3, ECF No. 26-1 (emphasis in original).)  But there is.  Plaintiff has alleged that light waves emitted from the GIF touched Plaintiff's retina, generated an electric signal, and caused a seizure.  Taking, as the Court must, Plaintiff's allegations as true, including his characterization of the science and Plaintiff's physical condition, there was physical contact.

Such contact can often be of an amorphous nature; it is not always accomplished by means of a solid, graspable object.  According to the Supreme Court, "'physical force' is simply 'force exerted by and through concrete bodies,' as opposed to 'intellectual force or emotional force.'"  *U.S. v. Castleman*, 134 S. Ct. 1405, 1414 (2014) (quoting *Johnson v. United States*, 559 U.S. 133, 138 (2010)).[4]  For example, courts around the Country have found that second-hand

---

[4]The Court was speaking in a slightly different context than the case at bar.  In *Castleman*, the Court was considering whether "caus[ing] bodily injury" under a specific (Tennessee) statute necessarily entailed the use of "physical force" as would trigger the provisions of 18 U.S.C. § 922(g).  The Court looked to common-law definitions of force, which "in this sense describ[es] one of the elements of the common-law crime of battery."  134 S. Ct. at 1414 (internal quotation marks omitted).

smoke (*i.e.*, causing a person to come into contact with harmful smoke) can constitute a battery. *See* Irene Sharf, *Breathe Deeply: The Tort of Smokers' Battery*, 32 Hous. L. Rev. 615, 663 n.263 (1995) (citing cases). In *Leichtman v. WLW Jacor Communications, Inc.*, 634 N.E.2d 697 (Ohio Ct. App. 1994), the court stated that "tobacco smoke, as particulate matter, has the physical properties capable of making contact." 634 N.E.2d at 699 (internal quotation marks omitted). Even less tangible than smoke is sound. Yet, a court in Georgia found a battery where the tortfeasor made a loud noise over the phone in order to harm the victim. *See Hendricks v. S. Bell. Tel. & Tel. Co.*, 387 S.E.2d 593, 594-95 (Ga. App. 1989). This Court has stated in a prior case, applying Maryland law, that "it is not unreasonable to infer that causing an electrical shock to someone may be regarded as a battery whether or not [the tortfeasor] ever laid a hand on [the victim]." *Carter v. Maryland*, Civ. No. JKB-12-1789, 2012 WL 6021370, at *11 (D. Md. Dec. 3, 2012).

Defendant here allegedly chose to use the electronic capabilities of a computer as a weapon—as a means of causing physical harm. Defendant's tweet, activating certain harmful capabilities of the transmitting computer, converted the computer into a weapon to inflict physical injury. The computer and the tweet were no longer merely a mode of communication. Something more, and separate, from mere communication occurred . . . an offensive touching. And, conscious interpretation of the "message" was irrelevant to the offensive touching.[5] The physical element that Defendant caused to come into contact with Plaintiff was something entirely outside either party's mind. It was not words or pictures that would require conscious interpretation (*i.e.* an internal process) to cause an impact. The strobe GIF was a physical tool,

---

[5] To be clear, Plaintiff's conscious interpretation of the tweet is irrelevant to the physical touching and harm that it caused. How Plaintiff interpreted the message (*i.e.*, "YOU DESERVE A SEIZURE FOR YOUR POSTS") may be relevant to other aspects of this case, such as whether Defendant is liable for a civil assault, or for determining intent.

one that would have the same impact on any person with Plaintiff's condition.  It would not have mattered if the GIF had displayed hateful words, words of kindness, certain colors or pictures, or only abstractions.  What mattered was the physical nature of the light emitted from the GIF.  The light, and not the emotional or intellectual impact of any accompanying message, caused a seizure, and it would not have caused a seizure if viewed by a person without epilepsy, regardless of whether they interpreted the tweet as mean-spirited, frightening, or friendly.[6]

To be sure, Plaintiff has not presented the Court with a case in which a Texas court found a battery under the circumstances presented here.  And the Court has found none.  But the Court also has not found any Texas case establishing that the use of a laser-beam, or a sonic weapon, constitutes a battery.  Yet if a person used a laser to intentionally blind another, or a sonic weapon to intentionally cause permanent hearing loss, the Court is confident that a Texas court would find a battery, even though the contact at issue was "only" a beam of light or a sound wave.  That no Texas case exists where a plaintiff was harmed by an epileptogenic GIF in a tweet is neither troubling nor surprising.  The broad sweep of Texas tort precedents provides firm ground on which to find that this unique fact pattern, if proven, qualifies as "battery."

Although neither party has presented the Court with a case that is entirely on point, neither party has presented the Court with a Texas case that would prevent relief for the contact Plaintiff has alleged here.[7]  Texas law does not suggest that knowledge of the specific physical

---

[6] Effectively, and under the law, the scenario alleged is no different from that where a tortfeasor is alleged to have picked up a computer, thrown it at a Plaintiff (including one with or without an eggshell skull, *see Otis Spunkmeyer, Inc. v. Blakely*, 30 S.W.3d 678, 689 (Tex. Ct. App. 2000) (discussing "eggshell skull" rule)), and caused an impact that injured the Plaintiff's brain.  And, any message displayed on the computer's screen at the instant of impact is irrelevant to the analysis of whether "battery" occurred.

[7] The Court has found some related, but not dispositive cases.  In *Controneo v. Shaw Environment & Infrastructure, Inc.*, 639 F.3d 186 (5th Cir. 2011), the Fifth Circuit Court of Appeals did not reach the question of whether "intentional overexposure of a plaintiff to radiation can be actionable as an 'offensive contact' battery under Texas law."  639 F.3d at 195.  In *Samsung Electronics America, Inc. v. Federal Insurance Company*, 202 S.W.3d 372 (Tex. App. 2006) a Texas state appellate court cited cases from other jurisdictions in deciding that "bodily injury" in the context of an insurance policy included biological injury to human cells allegedly caused by cellphone use.  202

reactions involved in the contact is needed to support the intent necessary for a claim of battery. That a tortfeasor is unaware exactly how a bullet is fired from a gun, or how exactly a poison would cause an illness, does not mean that his shooting or poisoning a victim is not a battery. Defendant here may not have reasoned through the exact physical properties that comprise the harmful touching in this case, but he allegedly knew that the GIF would cause a seizure, and he allegedly intended that the GIF cause a seizure. Ultimately, the Court has found no case law that forecloses the Plaintiff's avenue for relief, and it *has* found ample case law that supports his legal theory: that Defendant intentionally caused Plaintiff physical harm by means of a device, and that is a battery.[8]

### c. *Purposeful Infliction of Bodily Harm*

Finally, Defendant has moved to dismiss Count IV on the ground that it is a tort "not yet recognized under Texas law." (Reply 1, ECF No. 30.) Plaintiff concedes that the tort has not been recognized in Texas, and asks the Court to dismiss the claim without prejudice. (*See* Opp'n 7, ECF No. 27.) Defendant argues that because this tort has not been recognized in Texas, Plaintiff can prove no set of facts upon which relief could be granted, thus Count IV should be

---

S.W.3d at 379-80. In *Marshall v. AT&T*, the Fifth Circuit Court of Appeals affirmed summary judgment against a plaintiff whose battery claim rested on a theory that the harmful touching was "chemical particles emanating from . . . perfume." 1997 WL 336280, at *2. The facts of that case were significantly different from the instant action, and the court there stated that finding a battery under those facts would be to "creat[e] a new cause of action akin to a person-based nuisance theory." *Id.* The court briefly discussed *Leichtman*, where a court in Georgia held that particles from tobacco smoke could cause a battery, but "reserve[d] comment on the similarities or differences between tobacco smoke and perfume odors." *Id.* n.1.

[8] Developments in the ongoing criminal case are instructive, even if they do not control. Defendant was charged with aggravated assault, and a Grand Jury indicted him on that charge. Aggravated assault in Texas is the commission of an assault with a deadly weapon. Tex. Penal Code § 22.02(a)(2).[8] An assault under Texas law, as discussed above, could be a threat or a harmful (or offensive) physical contact. The Grand Jury found that Defendant committed the harmful physical contact form of assault, and did so with a deadly weapon. (*See* Indictment (finding that Defendant "intentionally, knowingly and recklessly cause[d] bodily injury to [Plaintiff]").) So, prosecutors and citizens of Texas have already concluded that, based on the evidence they have seen, there is probable cause to believe that Defendant committed the physical contact form of criminal assault, which, according to Defendant's own arguments, Texas courts look to for the definition of a civil battery.

dismissed *with* prejudice.  (*See* Reply at 1-2 (citing, *inter alia*, *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130 (4th Cir. 1993).)  Again, the Court disagrees with Defendant.

"The mere fact that a claim is novel does not defeat it."  <u>Prosser</u>, § 3 at 18.  Defendant seems to concede that this is a developing area of the law, and not a foreclosed avenue for relief. He writes that the Texas courts have "not *yet* recognized" the tort, and presents the Court with no Texas case law that would prevent relief.  (Reply at 1 (emphasis added).)  So, as this is a developing area of the law, *see* Restatement (Third) of Torts: Intentional Torts to Persons § 104 (Am. Law. Inst., Tentative Draft No. 1, 2015), the Court will dismiss the count without prejudice.  It is not the place of a federal court, particularly one in Maryland, to interfere with a developing body of state tort law in Texas.  Therefore, "with an eye alert to . . . avoiding disregard of State law," the Court will not prevent Plaintiff from trying his hand in a different court, or at a different time, if he so chooses.  *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 110 (1945).

## V.    *Conclusion*

Plaintiff may plead both battery and assault, and Texas courts recognize these claims as two distinct torts.  Plaintiff has sufficiently pled physical contact so as to state a claim for battery under Texas law.  Accordingly, the Court will deny Defendant's motion to dismiss with respect to Count I, and, as Plaintiff concedes that his fourth count is not yet recognized by Texas courts and asks that the Court dismiss that Count without prejudice, the Court will grant in part Defendant's motion to dismiss, dismissing Count IV, without prejudice.

DATED this 31st day of May, 2018.

BY THE COURT:


_____/s/_____
James K. Bredar
Chief Judge