IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| KURT EICHENWALD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 17-cv-01124-JKB |
| v. | ) |
| | ) |
| JOHN RIVELLO | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE MOTION OF
DEFENDANT JOHN RIVELLO FOR A PROTECTIVE ORDER AND/OR TO QUASH
AND OBJECTION TO RECORDS SUBPOENAS ISSUED BY PLAINTIFF**

This Court stayed this proceeding on August 28, 2017 pending resolution of related criminal cases against John Rivello ("Defendant"). In order to soften the harsh consequences of the stay as experienced by Kurt Eichenwald ("Plaintiff" or "Mr. Eichenwald"), this Court entered an Order on March 6, 2018, partially lifting the stay of this proceeding by allowing Plaintiff to begin conducting third party discovery if Defendant filed an answer to the Complaint. Dkt. 24. On March 21, 2018, Defendant filed: (i) an Answer as to Counts II and III (Dkt. 25); and (ii) a motion to dismiss as to Counts I (Battery) and IV (Purposeful Infliction of Bodily Harm/*Prima Facie* Tort) (Dkt. 26). Defendant agreed that because he had answered as to Counts II and III, third-party discovery could proceed as contemplated in this Court's March 6 Order. Dkt. 26-1 at 2.

Having been cleared to commence third-party discovery, and following additional investigation and identification of third-parties that Mr. Eichenwald believes possess discoverable information regarding Defendant and his actions and intentions in connection with

1

the December 15, 2016 attack, Mr. Eichenwald began the process of serving subpoenas for documents and things on those third parties on May 16, 2018. On May 30, 2018, Defendant filed a Motion for Protective Order and/or to Quash and Objection to Records Subpoenas Issued by Plaintiff ("Motion to Quash"). Dkt. 32.

Plaintiff has provided notice of subpoenas to Defendant for the following persons and entities: 1) PayPal Holdings Inc., 2) Richard B. Spencer, 3) Google LLC, 4) Charles C. Johnson,[1] 5) AT&T Inc., 6) Twitter Inc., and 7) Apple Inc. The notice and subpoena of Apple Inc. was provided to Defendant after the filing of the Motion to Quash, and as such is attached to the accompanying Declaration of Jennifer B. Maisel, dated June 8, 2018 ("Maisel Declaration") as Exhibit A.

## ARGUMENT

This Court should deny Defendant's Motion to Quash on the basis of three separate and independently sufficient reasons: 1) under Fed. R. Civ. P. 45(d)(3) this is not the correct Court to address Defendant's arguments, 2) Defendant does not have standing to challenge the third party subpoenas, and 3) Plaintiff's discovery requests are relevant and proportional to the needs of the case.

**I.    DEFENDANT FILED THIS MOTION IN THE WRONG COURT**

Fed. R. Civ. P. Rule 45, as amended in 2013, clarified and simplified subpoena practice in the Federal courts, permitting nationwide service of subpoenas issued by the court in which the action is pending, and specifying how (and where) a person subject to a subpoena may comply with, object to, or move to quash a subpoena. Amended Rule 45(c) defines the "place of compliance," and Rule 45(d)(3)(A) specifies that motions to quash or modify a subpoena are

---

[1] Service has been effected on all listed third parties except Charles C. Johnson. Plaintiff is still attempting to effect service on Mr. Johnson.

heard in "the district where compliance is required."

In this case, compliance is required in Texas for AT&T; in Virginia for Richard B. Spencer; and in California for the third-parties identified in the remaining five subpoenas.

As such, this Court is not located in the district where compliance is required for any served subpoena. This Court is instead what Rule 45(a)(2) defines as the "issuing court." Rule 45 explicitly provides that when the court where compliance is required is not the issuing court, a motion under this rule may be heard in the issuing court, <u>only</u> when the court where compliance is required transfers the motion to the issuing court—and then, only "if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f).

The Advisory Committee Notes on Rules accompanying the 2013 Amendment state that "subpoena-related motions and applications are to be made to the court <u>where compliance is required</u> under Rule 45(c)." (emphasis added). The Notes further describe the purpose of this requirement as follows:

> Subpoenas are essential to obtain discovery from nonparties. To protect local nonparties, local resolution of disputes about subpoenas is assured by the limitations of Rule 45(c) and the requirements in Rules 45(d) and (e) that motions be made in the court in which compliance is required under Rule 45(c). …
>
> In the absence of consent, the court may transfer in exceptional circumstances, and the proponent of transfer bears the burden of showing that such circumstances are present. The prime concern should be avoiding burdens on nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions. … Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion.

Fed. R. Civ. P. 45 Advisory Committee Notes; *see also* 9A Charles Allan Wright & Arthur R. Miller, FED. PRAC. & PROC. CIV. § 2463.1 (3d ed. April 2018 Update) ("motions to quash or enforce a subpoena, in all but the rarest cases, still must be made in the district where compliance with the subpoena is required.").

In this case, because none of the subpoenas at issue in Defendant's motion have been served on any person or entity in the District of Maryland, Rule 45 does not contemplate a motion to quash or modify the subpoenas being filed in this Court. As such, Defendant's Motion to Quash should be denied.

**II.   IN ADDITION, DEFENDANT HAS NO STANDING TO CHALLENGE THE SUBPOENAS BECAUSE HE CLAIMS NO RIGHT OR PRIVILEGE IN THE INFORMATION SOUGHT BY THE SUBPOENAS**

   **A. Defendant Lacks Standing To Challenge the Subpoenas**

The Fourth Circuit and courts in Maryland generally recognize that a "party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena." *See, e.g.*, *CineTel Films, Inc. v. Does 1-1,052*, 853 F. Supp. 2d 545, 554 (D. Md. 2012); *accord*, *In re Grand Jury Subpoena John Doe, No. 05GJ1318*, 584 F.3d 175, 184, n. 14 (4th Cir. 2009); *Am. Home Assur. Co. v. KBE Bldg. Corp.*, No. CIV. CCB-13-1941, 2015 WL 348292, at *13 (D. Md. Jan. 13, 2015). Indeed, Courts in this District have expressly held that parties do not have standing to challenge third-party subpoenas on the general basis of undue burden and relevance. *See CineTel Films,* 853 F. Supp. 2d at 556.  Instead, as contemplated by Rule 45, it is the direct recipients of the subpoenas who would have standing to contest the subpoena on such grounds. *Id*.

Defendant generally objects to the subpoenas under Rules 26(b)(1), 26(c) and 45 as "sweeping in their scope" and seeking information "that bear[s] no known relationship to this case" from parties who have "no known involvement in or connection to this case." Dkt. 32 at ¶¶ 1, 4, 6. Defendant further states that the subpoenas go beyond the scope of Rule 26(b)(1), have no apparent relevance, and are not proportional to the needs of the case. *Id*. at ¶ 5. Defendant argues that Plaintiff is "conducting some sort of 'fishing expedition,'" and refers to

4

the "apparent impropriety" of the Subpoenas. *Id*. ¶ 6-7. The Motion to Quash contains no further objections.

Defendant does not have standing to challenge the third-party subpoenas on the bases outlined in its motion—all of which relate to alleged undue burden and purported overbreadth. Defendant does not describe any private right or privilege held by him in the information sought by the subpoenas. Nor does Defendant allege a burden on him since he is not responsible for complying with the subpoenas. Accordingly, Defendant lacks standing to bring his Motion to Quash and the Motion should be denied for this reason as well.

**B. Defendant Has Not Alleged Any Reason to Grant a Protective Order**

Although courts in this District have held that a party has no standing to challenge subpoenas issued to a nonparty absent personal right or privilege, they have acknowledged that in certain cases there may be standing for bringing a protective order under Fed. R. Civ. P. 26(c). *Fangman v. Genuine Title, LLC*, No. CV RDB-14-0081, 2016 WL 560483, at *3 (D. Md. Feb. 12, 2016). Rule 26(c)(1) provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." However, Defendant has not argued that he will be subject to annoyance, embarrassment, or oppression as a result of the third-party discovery initiated by Plaintiff.[2] Nor has Defendant has alleged that he will incur undue burden or expense. Accordingly, Defendant's request for a protective order should be denied.

---

[2] Further, much of the third-party information sought, including the subscriber information and information regarding communications, has already been provided to law enforcement, as described in the Complaint. Dkt. 2 at ¶¶54-64. It is unclear to Plaintiff what remaining private right Defendant might assert, or what annoyance, embarrassment, or oppression Defendant might suffer when the information sought that is related to him is already in the hands of the FBI, Federal prosecutors and the Dallas County, Texas district attorney's office.

### III. THE MOTION SHOULD BE DENIED FOR THE ADDITIONAL REASON THAT THE REQUESTED DISCOVERY IS RELEVANT

Plaintiff's requests to Paypal, Google, AT&T, Twitter, Apple, Richard Spencer, and Charles Johnson/WeSearchr regarding subscriber information,[3] the Rivello Legal Defense Fund, and communications by or with Defendant, are relevant to proving that Defendant acted as alleged in the Complaint and determining the identity of others with whom Defendant planned or communicated regarding his attack on Mr. Eichenwald. Dkt. 2 at ¶¶ 33-34, 53, 57-61. The Complaint alleges that Defendant did not operate in isolation:

> 57. On information and belief, before and after his December 15, 2016 attack on Plaintiff, Defendant discussed with one or more third parties Plaintiff's epilepsy, a desire to harm Plaintiff, and how to maximize the chance and degree of harm inflicted on Plaintiff.
>
> 58. The contents of Defendant's communications with third parties concerning the attack on Plaintiff, as well as the identities of those third parties, are presently unknown to Plaintiff. On information and belief, Defendant is in possession of information that would identify such communications and third parties.

*Id.* at ¶¶57-58. Communications by or with Defendant are generally relevant for ascertaining, *inter alia*: 1) Defendant's knowledge of Plaintiff's epilepsy, 2) Defendant's knowledge of the effect of strobe lights on those with epilepsy, 3) Defendant's intent to cause a seizure, and 4) Defendant's intent to seriously injure or kill Plaintiff.

In his Motion, Defendant complains that Plaintiff's third party discovery requests regarding persons or topics such as Becky Barnes, the Rivello Legal Defense Fund, Richard Spencer, or concerning Defendant's father, David Rivello are a "fishing expedition." Dkt. 32, ¶ 6. But discovery into persons with whom Defendant communicated around the time of his attack

---

[3] This is a class of information which courts have consistently held are open to disclosure as a result of service providers being subpoenaed. *See, e.g., CineTel Films*, 853 F. Supp. 2d at 555 ("Internet subscribers do not have a protected privacy interest in their subscriber information—including names, addresses, phone numbers, and e-mail address—which they have already conveyed to their ISPs.").

on Mr. Eichenwald is based on more than speculation, and is not a "fishing expedition." To cite just one example (more are discussed below), even though, as alleged in the Federal criminal complaint and affidavit and as discussed in the Complaint in this lawsuit, Mr. Rivello sent his Twitter attack on Mr. Eichenwald using the anonymous Twitter handle @jew_goldstein, Dkt. 2 at ¶¶ 33-36, 54-56, other individuals, who are subjects of the subpoenas at issue, seemed to have known that the account was operated by John Rivello. For example, communications (sent immediately after the attack), stated "Awesome JR," and referred to the sender of the attack as "JR." *Id.* at ¶ 61. Further, as described in greater detail below, "Becky Barnes,"—which we believe to be a pseudonym—sent a message about Defendant on the day of his arrest describing her communication with Defendant and the @jew_goldstein account. As discussed in greater detail below, Ms. Barnes has publically described herself as being part of the direct message group that was involved in the attack on Mr. Eichenwald. Plaintiff's discovery requests are calculated to lead to information identifying such individuals and their communications with Defendant.

### A. Becky Barnes

Ms. Barnes, who variously identifies herself as "Becky," or "Becky Barnes" (and who has posted on Twitter as at least @srsBecky, @rlyBecky, and @notBeckyBarnes), initiated the "U.S. Marine John Rivello Legal Defense Fund," on the crowdfunding platform WeSearchr. Maisel Declaration, Exhibit B. The "legal defense fund" (a fund that Defendant's lawyer told this Court during our recent status conference that he knew nothing about) appears to have been created with specific knowledge of Defendant's attack on Mr. Eichenwald. "Becky's" updates to the legal defense fund included claims that she was "in current contact with [Defendant's] lawyer and family members." *Id.* Reproduced below is a screenshot of a Tweet from @notBeckyBarnes stating that she "was in that dm group the Feds raided." (emphasis added).



Maisel Declaration, Exhibit C.  The referenced "dm [direct messaging] group" that included Defendant and his communications about his attack on Plaintiff is relevant to the issues in this case.

### B. Caerulus Rex and Vendetta Vidame

Plaintiff believes that two pseudonymous individuals who identify themselves as "Caerulus Rex" and "Vendetta Vidame" communicated with Defendant around the time of his attack on Mr. Eichenwald about the attack.  These individuals host a podcast titled "Salting The Earth," which has produced an episode, "The (((People))) vs @Jew_Goldstein," that discusses the criminal case against Defendant based on the same actions underlying this case. Maisel

Declaration at ¶¶ 6-7, Exhibit D. An individual identifying himself as Vendetta Vidame states during the podcast:

> Oh, yeah, so the problem is, if you recall, they went through his direct messages. <u>They got to view his messages he sent to us afterward. And **_I was part of his group of friends that he was messaging at the time_**.</u> And, uh, we were kind of <u>celebrating over it, or telling him</u> *it was awesome*. And he was, you know, good. <u>**I sent him this, "*I hope he dies*." \*laughter\* "*I hope this gives him a seizure*."**</u> He wrote really bad OpSec kind of stuff, and he's gonna have a hard time kinda spinning that in court, although hopefully he can.

*Id.* at ¶ 8 (emphasis added). The individuals are associated with the Twitter accounts @VendettaVimiera, @Vendetta92429, and @rex_caerulus. Plainly, they—by their own admission—were in direct contact with Defendant and communicated with him about his attack on Mr. Eichenwald. Such communications are relevant to the issues in this case.

### C. Richard Spencer

Richard Spencer, a highly publicized white supremacist (Maisel Declaration, Exhibit E), was quoted in an interview printed in *The Atlantic* discussing facts underlying this case. A relevant excerpt is quoted below:

> Spencer blanked on Eichenwald's name, and both he and the minion laughed as they tried to recall it.
>
> "What is that guy's name? <u>The one whom *we* almost killed?</u>"
>
> "No, no," the minion corrected him, with the precision of in-house counsel. "We did not send that."
>
> Spencer revised his statement. "<u>***We*** collectively almost killed him.</u> Some alt-right s\*\*\*lord"—alt-right-speak for "online activist"—"sent him a meme."

Maisel Declaration, Exhibit E (emphasis added).

Spencer also tweeted "Let's start a legal defense fund for this hero of the meme war," referencing Defendant on the very day of Defendant's arrest and later that day linked to the Rivello Defense Fund, stating "There's now a legal fund for Jew Goldstein. It debunks

@kurteichenwald's claims." Maisel Declaration, Exhibits F, G. Mr. Spencer's apparent knowledge of (and possible participation in) Defendant's attack on Mr. Eichenwald is quite relevant to the issues in this case.

### D. Phone Records of David Rivello

The phone records of Defendant's father are also relevant because Defendant lives with his parents, and was arrested at the home of his parents.[4] Maisel Declaration, Exhibits H, I, J. To the same extent that determining the identity of those in communication with Defendant's known Twitter account is relevant to proving the claims alleged in the Complaint, so would determining the identity of those in communication with Defendant through other means, such as by the phone in the house in which he lived.

As such, Plaintiff's third-party discovery is relevant to the issues in this case.

### CONCLUSION

For at least the foregoing reasons, Mr. Eichenwald respectfully requests that the Court deny Defendant's Motion to Quash.

Respectfully submitted,

Dated: June 8, 2018

/s/ Steven Lieberman
Steven Lieberman
Jennifer B. Maisel (admitted *pro hac vice*)
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
607 14th Street, N.W. – Suite 800
Washington, D.C. 20005
Tel: (202) 783-6040
Fax: (202) 783-6031
Email: slieberman@rfem.com
Email: jmaisel@rfem.com
*Attorneys for Plaintiff Kurt Eichenwald*

---

[4] To the extent Defendant takes issue with Plaintiff seeking the phone records of Defendant's father, the Fourth Circuit does not recognize a parent-child privilege. *Under Seal v. United States*, 755 F.3d 213, 215 (4th Cir. 2014) ("No federal appellate court has recognized a parent-child privilege, and we decline to do so here.")

## **CERTIFICATE OF SERVICE**

 The undersigned hereby certifies that on this 8th day of June, 2018, a copy of the foregoing PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE MOTION OF DEFENDANT JOHN RIVELLO FOR A PROTECTIVE ORDER AND/OR TO QUASH AND OBJECTION TO RECORDS SUBPOENAS ISSUED BY PLAINTIFF was filed electronically through the Court's Electronic Case Management and Filing System. All parties to this case are able to access the filing through this system.

              */s/ Nasri V. B. Hage*
              Nasri V.B. Hage