IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| KURTH EICHENWALD | * | |
| Plaintiff | * | C.A. No. 1:17-cv-01124 |
| v. | * | |
| JOHN RIVELLO | * | |
| Defendant | * | |
| | * | |

# MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY DAVID M. RIVELLO'S MOTION TO QUASH SUBPOENA OR FOR A PROTECTIVE ORDER

## **TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

ARGUMENT ...................................................................................................................................4

I. THE RECORDS SUBPOENA SEEKS PRIMARILY DOCUMENTS AND INFORMATION PROTECTED BY THE ATTORNEY CLIENT PRIVILEGE ...............4

    A. DAVID M. RIVELLO HOLDS AN ATTORNEY-CLIENT PRIVILEGE ............5

    B. DAVID AND JOHN RIVELLO JOINTLY SHARE AN ATTORNEY-CLIENT PRIVILEGE UNDER AND PURSUANT TO THE "COMMON INTEREST .....7

II. THE RECORDS SUBPOENA SEEKS DOCUMENTS PROTECTED BY THE ATTORNEY WORK-PRODUCT DOCTRINE..................................................................8

III. THE RECORDS SUBPOENA SEEKS DOCUMENTS IMMUNE FROM DISCOVERY AND PROTECTED BY PRIVILEGES HELD BY OTHER NON-PARTIES. ...............................................................................................................9

IV. THE RECORDS SUBPOENA IS, IN PART, VAGUE, OVERBROAD AND SEEKS DOCUMENTS NOT RELEVANT TO THE ISSUES IN THIS CASE ...........................11

V. THE DEPOSITION SUBPOENA SHOULD BE QUASHED AS THERE IS NO RELEVANT NON-PRIVILEGED TESTIMONY TO BE OBTAINED FROM ..............12

VI. IN THE ALTERNATIVE, MOVANT REQUESTS THE COURT TO ENTER A PROTECTIVE ORDER BARRING THE PLAINTIFF FROM REQUESTING .........13

CONCLUSION..............................................................................................................................13

TABLE OF AUTHORITIES ..........................................................................................................ii

# TABLE OF AUTHORITIES

**DECISIONS**                                                                                           **PAGE**

*Bates v. Little Rock*, 361 U.S. 516, 523–24 (1960) ...................................................................10

*Benin v. Center for study of Popular Culture*, 2007 WL1795693 (D.CA, 2007) ...........................10

*Black Panther Party v. Smith*, 661 F.2d 1243, 1264–66 (D.C. Cir. 1981) ......................................10

*Cavallaro v. United States*, 284 F.3d 236, 249-50 (1st Cir.2002) .....................................................7

*Eilers v. Palmer*, 575 F. Supp. 1259, 1261 (D. Minn. 1984) .....................................................10, 11

*Flo Pac, LLC v. Nutech, LLC*, 2010 WL 5125447 (D. Md., 2010) ...................................................7

*Gibson v. Florida Legislative Committee*, 372 U.S. 539, 544 (1963) ............................................10

*Grand Jury Investigation (Sun Co,)*, 599 F.2d 1226, 1232 (3d Cir. 1979) .......................................9

*Grand Jury Subpoena dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007) ..................................8

*Hanson v. Agency for International Development*, 372 F.3rd 286,292 (4th Cir, 2004) ...................7

*Hawkins v. Stables*, 148 Fed 3rd 379, 383 (4th Cir. 1998) ..................................................................5

*Hickman v. Taylor*, 329 U.S. 495 at 510-511(1947) .........................................................................8

*Int'l Union, United Automobile, Aerospace and Agricultural Implement
Workers of America v. Nat'l Right to Work Legal Defense and Education Foundation, Inc.*,
590 F.2d 1139, 1152 (D.C. Cir. 1978) ........................................................................................10, 11

*ISFKC v. Lee*, 1985 WL315 (D. SDNY) .........................................................................................10

*Kent Corporation v. N.L.R.B.*, 530 F2d. 612, 623 (5th Cir.),
  cert. denied, 429 U.S. 920 (1976). ...................................................................................9

*Moore v. Black Panther Party* and
  *Smith v. Black Panther Party*, 458 U.S. 1118 (1982) ..................................................10

*NAACP v. Alabama*, 357 U.S. 449 (1958). ....................................................................10

*NAACP v. Button*, 371 U.S. 415, 428-29 (1963) ...........................................................10

*National Organization for Women v. Sperry Rand Corp.*,
  88 F.R.D. 272, 274 (D. Conn. 1980) .............................................................................11

*Pollard v. Roberts*, 283 F. Supp. 248, 257 (E.D. Ark.),
  aff'd per curiam, 393 U.S. 14 (1968). ............................................................................11

*Sheet Metal Workers Intl. Assn v. Sweeney*, 29 F.3d 120, 124 (4th Cir, 1994) ................7

*Shelton v. Tucker*, 364 U.S. 479, 488 (1960) ..................................................................10

*United States v. Adlman,* 134 F.3d 1194, 1197 (2d Cir. 1998) ........................................8

*United States v. Aramony,* 88 F.3d 1369, 1392 (4th Cir.1996) ........................................7

*United State v. Koval*, 296 F.2d 918 (2d Cir. 1961) .........................................................9

*United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir.1989) .......................................7

*United States v. Star Scientific, Inc.*, 205 F. Supp. 2nd 482, 484 (DMD 2002) ................6

*Upjohn Company v. US*, 449 US 383, 389 (1981) .......................................................4, 8

**Rules**

Fed.R.Civ.P. 26(c) ...............................................................................................................6

Fed.R.Civ.P. 45(c)(2) ..........................................................................................................6

Fed.R.Civ.P. 45 (c)(3)(a) ....................................................................................................6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| KURTH EICHENWALD | * | |
| Plaintiff | * | C.A. No. 1:17-cv-01124 |
| v. | * | |
| JOHN RIVELLO | * | |
| Defendant | * | |
| | * | |

**<u>MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY DAVID M. RIVELLO'S
MOTION TO QUASH SUBPOENA OR FOR A PROTECTIVE ORDER</u>**

**<u>INTRODUCTION</u>**

In this action Plaintiff has sued John Rivello alleging personal injuries sustained as a result of opening a twitter message sent by the Defendant to him, which he alleges was designed to and did, in fact, cause him to suffer an epileptic seizure.

At the request of the Defendant, in order to preserve his Fifth Amendment right against self-incrimination, this Court stayed all matters in this civil action pending final adjudication of state and federal criminal charges against the Defendant, which charges arise out of the same allegations as those herein.[1] In response to a request from Plaintiff, however, the Court entered an order permitting certain pre-trial discovery to go forward. Subsequently, on November 1, 2018 the Plaintiff served two subpoenas on David M. Rivello, the father of the Defendant. The first subpoena, a copy of which is attached hereto as **Exhibit A** (Deposition Subpoena) directed

---

[1] All federal charges in the State of Texas have been dismissed and the Defendant remains charged in state court only.

him to appear and give testimony on January 7, 2019[2] and the second, a copy of which is attached hereto as **Exhibit B** (Records Subpoena) directed him to produce records which were identified in twenty (20) separate categories or requests. It is those subpoenas and the documents identified in **Exhibit F** below which are the subject of this motion.

Prior hereto, Bruce F. Bright, Esq., acting as counsel for both John Rivello and David M. Rivello, timely filed an objection to both subpoenas, objecting generally on the grounds that the subpoenas were overly broad, vague and beyond the permissible scope of discovery and, more specifically, that the subpoenas sought to invade the attorney-client privilege and the attorney-work product doctrine. (See, attached **Exhibit C**, Objections to Subpoena[3]). Undersigned counsel has now entered his appearance as counsel for non-party David M. Rivello for the purpose of asserting his rights to preserve the confidentiality of protected documents and communications and to obtain an order from this Court protecting the rights of Defendant, John Rivello and other non-parties.

As is noted in greater detail below, David M. Rivello sought legal counsel for himself before his son was charged. He and his son retained the firm of Ayers, Jenkins, Gordy and Almand in Ocean City, Maryland in December of 2016 and more specifically, attorneys Bruce F. Bright and Mark S. Cropper of that firm.[4] In addition, David M. Rivello retained Charles Peckham, Esquire of Houston, Texas to also represent his interests in matters which might have been brought in that jurisdiction.

---

[2] By Agreement of counsel, that deposition has been rescheduled to January 16, 2019.

[3] The previously filed objections are incorporated herein by reference.

[4] See, attached affidavit of David M. Rivello, attached hereto as **Exhibit D**, which is incorporated herein by reference.

2

On March 20, 2017 John Rivello retained Matthew Alford, Esq. of Houston, TX to represent him in criminal matters pending before the Texas state courts. Matthew Alford in turn retained David M. Rivello on that same date to act as an investigator and to assist him in the review and analysis of digital and documentary evidence which was pertinent to the criminal defense of John Rivello.[5]

David M. Rivello was neither a party nor a witness to the acts of which the Plaintiff complains. He was and is, however, an experienced investigator. He began his career as a boardwalk police officer for the Ocean City Police Department. He quickly rose through the ranks and became a detective in the criminal investigation division, investigating all crimes. Thereafter, he focused his investigatory work on crimes involving the possession and distribution of illicit drugs. In 1983 he left the Ocean City Police Department to join the Drug Enforcement Administration where he continued to be employed until his retirement in 2011. In his more than a quarter-century of police work, he became skilled at not only investigation and report preparation but also in the analysis of all forms of communication, financial documents, public documents, computerized data and the preparation of summaries involving all of these types of evidence. As such, he was and is a logical choice to perform investigative and other work for Matthew Alford, Esq.

Since being retained, David M. Rivello has done extensive work for Mr. Alford in research and analysis of thousands of pages of documents and data. He communicated by email and voice with Mr. Alford and his own attorneys and prepared extensive reports and analyses for counsel dealing with a broad array of issues in this case. Accordingly, there exists an expansive

---

[5] See, Attached Affidavit of Matthew Alford, attached hereto as **Exhibit E**, which is incorporated herein by reference.

3

body of work-product and communications which are entitled to protection under the attorney client privilege and/or the privilege arising from the attorney-work product doctrine.

The Communications between counsel and between David and John Rivello and their counsel which are written are set forth and identified in the privilege log exchanged between counsel for the Parties, a copy of which is attached hereto as **Exhibit F** (Privilege Log). Movant asserts attorney-client privilege and/or attorney work-product doctrine privilege with respect to the documents identified in the Privilege Log (Exhibit F), as well as most of the documents sought through the existing subpoena (Exhibit B) and all communications with counsel either as client and/or investigator. He also seeks the Courts determination that some of the information sought is irrelevant or is immune from discovery by virtue of protections and privileges held by other non-parties.

## ARGUMENT

I.  THE RECORDS SUBPOENA SEEKS PRIMARILY DOCUMENTS AND INFORMATION PROTECTED BY THE ATTORNEY CLIENT PRIVILEGE.

David M. Rivello is in a very unique position relative to the facts and circumstances of the Complaint and the discovery sought by Plaintiff. At the outset of the controversy, before his son was ever charged criminally or sued civilly, he sought legal counsel due to the fact that his son, John Rivello, was living in a home owned by David and his wife at the time of the alleged incident. In December of 2016, he and his son both retained the same counsel in Maryland and Texas and began communications with them.

The attorney-client privilege "recognizes that sound legal advice or advocacy...depends upon the lawyers being fully informed by the client". *Upjohn Company v. US*, 449 US 383, 389 (1981).

4

The elements of the privilege are:

(1) The asserted holder of the privilege is or sought to become a client;

(2) The person to whom the communication was made (a) is a member of the bar of a Court or his subordinate and (b) in connection with this communication is acting as a lawyer;

(3) The communication relates to a fact to which the attorney was informed (a) by his client, (b) without the presence of strangers, (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and

(4) The privilege has been (a) claimed and (b) not waived by the client.

*Hawkins v. Stables*, 148 Fed 3rd 379, 383 (4th Cir. 1998)

A. DAVID M. RIVELLO HOLDS AN ATTORNEY-CLIENT PRIVILEGE SEPARATE FROM AND INDEPENDENT OF THAT HELD BY JOHN RIVELLO.

The Affidavit of David M. Rivello establishes that he sought legal advice on or about December 22, 2016 from the law firm of Ayres, Jenkins, Gordy & Almand, P.C. and specifically from Bruce F. Bright, Esquire and Mark S. Cropper, Esquire and that he did so as he was concerned about his personal liability and sought their advice. Each attorney is a member of the Maryland Bar and he consulted them in their capacity as lawyers. Communications that went between them dealt specifically with the subject of the Plaintiff's Complaint. David Rivello's Affidavit indicates he sought their opinions on issues of law and to retain their legal services. In this instance there is no indication that he did so with the purpose of committing a crime or tort and he specifically avers in his Affidavit that he has not, under any circumstance, waived the privilege which he has previously asserted by way of objection to the initial Subpoena and now asserts through this Motion.

It is clear from the above that David M. Rivello has an attorney-client privilege which protects communications between himself and his attorneys and which gives him standing to object to the Subpoenas issued by Plaintiff.

As a non-party he may object to a Subpoena by:

> "Fil[ing] a motion to quash or modify a subpoena pursuant to Fed.R.Civ.P. 45 (c)(3)(a), Seek[ing] a protective order pursuant to Fed.R.Civ.P. 26(c) or ...[by] object[ing] to the production of documents by opposing a motion to compel under Fed.R.Civ.P. 45(c)(2)

*United States v. Star Scientific, Inc.*, 205 . F. Supp 2nd 482, 484 (DMD 2002)

The Rule requires the Court to quash or modify a Subpoena that requires disclosure of privileged or other protected matter.

The Records Subpoena (Exhibit B) contains 20 separate categories of documents for which production is sought.[6] Those requests which seek information primarily protected by the attorney-client privilege (Request Nos.1,2,3,4,8,11,15) seek communications with the Defendant and anyone else relative to the Plaintiff, as well as. communications and documents relative to the ownership and use of certain email accounts and telephone numbers (Request Nos. 8, 9, 10 & 11) The documents and communications sought by the Plaintiff seek to discover the communications between David M. Rivello and his counsel with whom he discussed the Plaintiff and his actual and potential claims. Indeed, the Plaintiff and his potential claims were the sole reason for consulting an attorney in the first instance. Additionally, in this instance, the privilege is broader and more encompassing due to the fact that he and his son contacted and retained the same attorneys, at the same time, regarding the same subject matter and for the same purpose which invokes the common interest rule.

---

[6] Hereinafter they are referred to by using the same numbering as used by Plaintiff in his subpoena, i.e. Request No.___.

6

B.     DAVID AND JOHN RIVELLO JOINTLY SHARE AN ATTORNEY-CLIENT PRIVILEGE UNDER AND PURSUANT TO THE "COMMON INTEREST RULE".

The "Common Interest Rule" extends the application of the attorney-client privilege to multiple parties consulting the same attorney. It is well described by the Court in *Hanson v. Agency for International Development*, 372 F.3rd 286,292 (4th Cir, 2004).

> Courts have established rules as to when the attorney-client privilege may apply to multiple parties. Described " 'as an extension of the attorney client privilege,' " *United States v. Aramony*, 88 F.3d 1369, 1392 (4th Cir.1996) (quoting *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir.1989)), the common interest doctrine applies when two or more parties consult or retain an attorney concerning a legal matter in which they share a common interest. *Sheet Metal Workers Intl. Assn v. Sweeney*, 29 F.3d 120, 124 (4th Cir, 1994); *see also* Cavallaro v. United States, 284 F.3d 236, 249-50 (1st Cir.2002). In this context the communications between each of the clients and the attorney are privileged against third parties, and it is unnecessary that there be actual litigation in progress for this privilege to apply. *Aramony*, 88 F.3d at 1392.
> See also, *Flo Pac, LLC v. Nutech, LLC*, 2010 WL 5125447 (D. Md., 2010)

David M. Rivello and John Rivello consulted the same attorneys regarding the Plaintiff. In doing so they shared a common interest in determining their rights, responsibilities and liabilities arising out of the interaction between Plaintiff and Defendant. As in *Hanson, supra,* there is no requirement that all persons consulting the attorney be parties to the litigation. It is sufficient that they shared a common purpose and interest. In the instant matter, the interests of David and John Rivello were identical. They arose out of a single set of operative facts. It is a situation analogous to that of *respondeat superior* where the act of a single party can impose liability upon another without the others participation in or witnessing of the operative events giving rise to the cause of action. In such a circumstance, as in this case, the interests of the parties are identical. John and David Rivello attended the same meetings, shared email correspondence between them and their attorneys and shared information in the investigation and preparation of defenses to the claims of the Plaintiff. The attorney-client privilege protects those

communications that took place between them in furtherance of their common interest, as well as any documents evidencing or memorializing same.

    II.    THE RECORDS SUBPOENA SEEKS DOCUMENTS PROTECTED BY THE ATTORNEY WORK-PRODUCT DOCTRINE.

The attorney work product doctrine is fundamental to our adversarial system:

> ...it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant facts, prepare his legal theories and plan his strategy without undue and needless interference...This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs and countless other tangible and intangible ways{.}

*Hickman v. Taylor*, 329 U.S. 495 at 510-511 (1947)

Work product which can reveal the "mental impressions, conclusions, opinions or legal theories of an attorney or other representative is entitled to even greater, "special protection". *In re Grand Jury Subpoena dated* July 6, 2005, 510 F.3d 180, 183 (2d Cir. 2007) (*citing United States v. Adlman*, 134 F.3d 1194, 1197 (2d Cir. 1998); *Upjohn Co. v. United States,* 449 U.S. 383, 401-402(1981).

The affidavits of David M. Rivello and Matthew Alford, Esq. confirm that at the time John Rivello retained Matthew Alford to represent him, Matthew Alford, at the same time, retained David M. Rivello to serve as his investigator and assistant in the preparation of the defense of John. David was a logical choice given his experience and his close association with John. David's role as assistant and investigator to attorney Alford consisted of research and analysis of thousands of documents and the preparation of written analyses and summaries.

[7]Those documents are generally identified as the first two items on the Privilege Log (**Exhibit F**).

The attorney work product doctrine protects not only the work product and mental impressions of the attorney but also those of his representative. *United State v. Koval*, 296 F.2d 918 (2d Cir. 1961). The scope and reach of the work-product protection is greater and broader than the attorney-client protection. In re *Grand Jury Investigation (Sun Co,)*, 599 F.2d 1226, 1232 (3d Cir. 1979). Opinions and mental impressions enjoy a protection that is almost absolute. The protection applies even if no litigation subsequently ensues. *Kent Corporation v. N.L.R.B.*, 530 F2d. 612, 623 (5th Cir.), cert. denied, 429 U.S. 920 (1976).

The subpoena issued for production in Request Nos. 1,2,3,4,8,11 & 18 all involve documents and communications which are protected from discovery by the work-product doctrine.[8] They involve direct communications between the attorney and the clients, research performed by David M. Rivello for an attorney, analysis of documents or data or preparation of summaries prepared by David M. Rivello for John's counsel.

> III. THE RECORDS SUBPOENA SEEKS DOCUMENTS IMMUNE FROM DISCOVERY AND PROTECTED BY PRIVILEGES HELD BY OTHER NON-PARTIES.

Request Nos. 5,6,7, 13 & 14 request that the deponent produce all documents and communications relative to the Rivello Defense Fund, an online fundraiser, as well as documents evidencing the funding of the defense in this litigation and in the State of Texas criminal matters. First, the documents and communications are not relevant to any issue in this case. More

---

[7] David M. Rivello did not conduct any witness interviews.
[8] There is substantial overlap in the privileges which apply to the subpoena requests and the documents identified in the Privilege Log. By excluding or including a document in or from a certain category, movant does not intend to indicate that only one or the other privilege applies.

importantly, however, discovery of the requested information and documents is protected by the First Amendment to the United States Constitution.

The First Amendment protects the right to advocate anonymously for one's point of view and this vital protection includes the right to support litigation. *NAACP v. Button*, 371 U.S. 415, 428-29 (1963); *Benin v. Center for study of Popular Culture*, 2007 WL1795693 (D.CA, 2007).

The origin and breadth of the protection and the privilege is concisely set forth in *I.S.F.K.C. v. Lee*, 1985 WL315 (D. SDNY)

> The starting point of the analysis is the Supreme Court's decision in *NAACP v. Alabama*, 357 U.S. 449 (1958). The Court there stated:
>
>> It is beyond dispute that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech . . . . It is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute [an] effective . . . restraint on freedom of association.
>
> *\*8 Id. at 460–62.*
>
> The Court held that the right to one's own beliefs and associations is a fundamental constitutional freedom, *id. at 460*, and that compelled disclosure of those associations would violate that freedom. *Id. at 462–63*. The Court explicitly stated that 'it is immaterial whether the beliefs to be advanced by association pertain to political, economic, religious or cultural matters.' *Id. at 460*.
>
> From the right of associational privacy established in *NAACP v. Alabama* has been derived a qualified privilege, which applies to compelled disclosure of the identity of an association's members or sympathizers, *Gibson v. Florida Legislative Committee*, 372 U.S. 539, 544 (1963); *Bates v. Little Rock*, 361 U.S. 516, 523–24 (1960); *Black Panther Party v. Smith*, 661 F.2d 1243, 1264–66 (D.C. Cir. 1981), vacated mem. sub nom. *Moore v. Black Panther Party* and *Smith v. Black Panther Party*, 458 U.S. 1118 (1982)[13]; *Eilers v. Palmer*, 575 F. Supp. 1259, 1261 (D. Minn. 1984), and to compelled disclosure of the sources or uses of an organization's funds. *Buckley v. Valeo*, 424 U.S. 1, 66 (1976) ('the invasion of privacy of belief may be as great when the information sought concerns the giving and spending of money as when it concerns the joining of organizations, for [f]inancial transactions can reveal much about a person's activities, associations, and beliefs.''); *Shelton v. Tucker*, 364 U.S. 479, 488 (1960); *Int'l Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Nat'l*

10

*Right to Work Legal Defense and Education Foundation, Inc.*, 590 F.2d 1139, 1152 (D.C. Cir. 1978) (hereinafter '*Int'l Union*'); *Eilers v. Palmer*, supra, 575 F. Supp. at 1261; *Pollard v. Roberts*, 283 F. Supp. 248, 257 (E.D. Ark.), *aff'd per curiam*, 393 U.S. 14 (1968). The privilege is designed to protect members of groups from harassment and intimidation, see *National Organization for Women v. Sperry Rand Corp.*, 88 F.R.D. 272, 274 (D. Conn. 1980) & cases cited therein (hereinafter '*NOW*'), and to prevent the 'chilling effect' that disclosure may have on the willingness of individuals to associate with the group. *Britt v. Superior Court of San Diego County*, 20 Cal. 3d 844, 574 P.2d 766, 772, 143 Cal. Rptr. 695, (1978).

The identity and financial contributions of individuals through either the Rivello Legal Defense Fund or directly to the Defendant is privileged and neither the Defendant nor the movant should be required to provide the requested information.

IV. THE RECORDS SUBPOENA IS, IN PART, VAGUE, OVERBROAD AND SEEKS DOCUMENTS NOT RELEVANT TO THE ISSUES IN THIS CASE AND/OR MORE APPROPRIATELY OBTAINED FROM OTHER THIRD PARTIES.

Request No. 8 seeks documents "sufficient" to show that the email address jrivello@gmail.com was used by the Defendant. It seeks documents to establish the ownership or use of that account. Communications received by David M. Rivello from that account would likely not be relevant to this litigation and, if relevant, would be privileged from discovery under the attorney-client privilege and/or attorney-work product doctrine. The shear over breath of the request makes it unduly burdensome for the Movant to review every email correspondence received or sent to the Defendant through that account. It would be a simple and more probative effort for the Plaintiff to subpoena the information directly from gmail.com, which would not require invasion of the privileges protecting the substance of those communications contained in the emails.

Request number 11 seeks documents evidencing all communications made by or to the Defendant through the Movant's email and/or telephone accounts. It seeks those for a period in excess of one year. The request is overbroad in that it is not limited to any particular topic and,

11

again, it is likely to include communications which are not relevant to this proceeding and, if relevant, would be protected from discovery under the attorney-work product and/or attorney-client privileges.[9]

Request numbers 19 and 20 seek documents showing the ownership of a residence located 1808 East Clearlake Drive in Salisbury, Maryland together with any insurance policies reflecting insurance coverage on the residence. These requests are not relevant to any issue in the case and are beyond the reasonable and permissible scope of discovery. The home is owned by the Movant and his wife.

### V. THE DEPOSITION SUBPOENA SHOULD BE QUASHED AS THERE IS NO RELEVANT NON-PRIVILEGED TESTIMONY TO BE OBTAINED FROM THIS NON-PARTY.

The deposition subpoena issued to David M. Rivello to appear and testify does not indicate the anticipated areas of testimony. However, one can readily glean from the documents requested what areas the Plaintiff will inquire about. Those areas include predominately areas covered by the attorney client-privilege and the attorney-work product doctrine, as all of the facts knowledge of the Movant of the facts relevant to this case came in the course of privileged communications with his attorney and/or alternatively, while performing investigatory and assistant work with attorney Matthew Alford. It is not alleged, as it would be untrue, that the Movant was a participant in or witness to any of the events that are the subject of Plaintiff's Complaint. Accordingly, he has no personal knowledge of those events and the only information he may have learned would have been in a protected capacity.

In light of the above, Movant requests that the Court quash the Subpoena issued for him to appear and give testimony.

---

[9] The Moveant has no records responsive to request number 10 as he did not pay for any phone number or email account used by the Defendant during the period in questions. Additionally, the Movant has no documents responsive to Request number 12 as he has had no communication with Richard Spencer.

12

VI.  IN THE ALTERNATIVE, MOVANT REQUESTS THE COURT TO ENTER A PROTECTIVE ORDER BARRING THE PLAINTIFF FROM REQUESTING DOCUMENTS AND/OR TESTIMONY, THE PRODUCTION OF WHICH WOULD VIOLATE ANY OF THE AFOREMENTIONED PRIVILEGES.

If the Court does not quash the subpoenas in their entirety, Movant requests the Court to enter a protective order pursuant to the terms of which the Movant will not be required to produce documents responsive to Request numbers 1-20. Additionally, Movant requests the Court to preclude the Plaintiff from making inquiry during the course of any deposition relative to documents and communications which are protected by the attorney-client privilege, documents and communications which constitute attorney work product, documents and communications relative to funding of litigation in which Defendant is involved, documents and communications relative to the ownership and insurance of Movant's property located at 1808 East Clear Lake Drive, Salisbury, Maryland 21804, and documents and communications which are not relevant to this proceeding.

## **CONCLUSION**

Respectfully, for all of the aforegoing reasons, the Court should quash the records Subpoena and Deposition Subpoena in their entirety. In the alternative, Movant respectfully requests to the court: (i) an Order substantially modifying the Subpoena; and (ii) enter a protective order limiting the scope of the required production and testimony.

Date:  December  31, 2018

_____
James L. Otway, Esquire
(Federal Bar #22717)
jotway@otwayrusso.com

OTWAY RUSSO, P.C.
108 West Main Street
Salisbury, Maryland 21801
Telephone 410-749-3900
Facsimile 410-749-8577
*Attorneys for Non-Party, David Rivello*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this  31st  day of December, 2018, a copy of the foregoing  MEMORANDUM IN SUPPORT OF NON-PARTY WITNESS, DAVID M. RIVELLO, MOTION TO QUASH SUBPOENAS AND FOR OTHER RELIEF was eFiled and eServed upon the following:  Steven Lieberman, Esquire, Jennifer B. Maisel, Esquire, Rothwell, Figg, Ernst & Manbeck, P.C., 607 14th Street, N.W., Suite 800, Washington, D.C. 20005(slieberman@rfem.com  jmaisel@rfem.com) and  Bruce F. Bright, Esquire, 6200 Coastal Highway, Suite 200, Ocean City, Maryland 21842 (bbright@ajglaw.com).

_____
James L. Otway

14